JOY COSSICH LOBRANO, Judge.
hOn January 22, 2009, the State of Louisiana charged the defendant, Ronald Reel, by bill of indictment, with one count of aggravated rape (count one), a violation of La. R.S. 14:42, and one count of unauthorized entry of an inhabited dwelling (count two), a violation of La. R.S. 14:62.3. The defendant pled not guilty to all charges at his arraignment. Following a jury trial, the defendant was convicted of the lesser offense of forcible rape on count one and guilty as charged on count two.
On April 23, 2010, defense counsel filed a motion for new trial (supplemented by the defendant pro se on May 7, .2010,) which the trial court denied on June 10, 2010. Also on June 10, 2010, the trial court sentenced the defendant on his conviction on count one to forty years at hard labor, with the first two years to be served without benefit of parole and with credit for time served. On count two, the defendant was sentenced to six years at hard labor with credit for time served. The sentences were ordered to run concurrently with each other and concurrently with any other sentence the defendant may be serving.
Following sentencing, the State filed a multiple bill of information and the defense filed a motion for appeal, which was granted. Following a hearing on the |2multiple bill, the trial court adjudged the defendant a triple felony offender. On September 3, 2010, the trial court vacated the defendant’s original sentence on count one and resentenced him pursuant to La. R.S. 15:529.1 to serve eighty years at hard labor, to run concurrently with any other sentences the defendant may be serving.
Testimony at trial revealed that on April 9, 2006, the victim, T.P.[1], lived with her brother, W.P., at his home in the 6600 block of Brunswick Court in New Orleans. On the night of April 9, 2006, W.P. received several cell phone calls from the defendant, asking to speak with the victim and wanting to know where she was. The following morning, W.P. left for work at 6:30 a.m., leaving the victim home alone. W.P. did not give the defendant permission to enter his house.
The victim testified that she and the defendant met in 2004, and had an off and on romantic relationship for one and one-half years. The defendant was a violent person and began abusing the victim shortly after they met. Although the defendant stayed with her at her brother’s Brunswick Court house on occasion, he did not live there. The victim asked the defendant to leave on many occasions, but he refused, telling her that because she did not own the house, her brother would have to put him out. He also warned her that if her brother put him out, he would kill her and her family. The victim made several domestic abuse complaints against the defendant. On one occasion, he was jailed for five months, but as soon as he was released, he returned to the Brunswick Court house. The defendant continued to abuse her.
laWhen Hurricane Katrina hit the city, T.P. evacuated to New Iberia for about *511 two weeks. She did not tell the defendant where she was relocating, but he tracked her down.
The day before the rape, the defendant called the victim to tell her that he was going to leave her alone and move on with his life. When the victim agreed that was a good idea, the defendant became enraged, cursing and calling her names. Every time she hung up the phone, he would call again and rant and rave. His persistent calls were upsetting to the point that she took her phone off the hook. When he could not speak to the victim, the defendant began calling her brother.
When she awoke the next morning, the defendant was in her bedroom. He was wearing hospital gloves and brandishing a gun. According to T.P., the defendant gained entrance to the house by breaking the back door and using a knife to pick the lock. The defendant told her that he came to kill her by shooting her four times in the head. He told her that after he killed her, he intended to set the house on fire. The victim begged for her life, but the defendant explained that if he did not kill her, she would call the police and have him put in jail. He also told her that he spent the previous night in the back yard. Next, the defendant told her to follow him to the back yard so “[he could] show [her] what else [he] had for [her].” The defendant told the victim: “That’s what I have for you right there, the gas can.”
When the two went back in the house, the defendant admitted that he had cut the wires on the surveillance cameras. He then raped her at gunpoint as she begged him not to kill her. The defendant taunted her about killing her because if the police arrested him, he would go to jail for the rest of his life. Then he told her, |4“You ain’t going to feel it. I’m going to shoot you in your head four times, and I’m going to set the house on fire because I can’t leave no evidence ... without evidence, there’s no case.” After offering the defendant financial help and assuring him she would not call the police, the defendant allowed the victim to go to work. He continued to threaten her, telling her that if she said anything to her neighbors, he would kill them.
The defendant rode the bus with the victim to work. As she was getting off the bus, the defendant told her, “... don’t forget” as he patted the gun in his pocket. The defendant remained on the bus, and when the victim was certain the defendant was gone, she ran to her sister’s house two blocks away. She told her sister what happened. Her sister called her brother, W.P., and he and the victim returned to their home. The victim did not tell her brother she was raped because she was ashamed; instead, she told him that the defendant broke into the house and threatened to kill her. W.P. stated that when he and the victim returned to their Brunswick Court home, he noticed that the wires to the security cameras mounted on the back of his house had been cut. Prior to that morning, the security cameras were operational. T.P. told the investigating female officer that the defendant “forced her to have sex with him.” She was transported to the hospital for medical testing.
Detective Mike McCleery conducted the investigation of the unauthorized entry and rape at the Brunswick Court residence. Detective McCleery spoke with officers who had arrived at the scene before him and ordered the crime lab to examine and photograph the scene. Detective McCleery also spoke to the victim and her brother. The victim was very nervous, fearing the suspect would return to the residence. According to the detective, he found no evidence of forced entry.
IsAs a result of his conversations with the victim and W.P., Detective McCleery *512 developed the defendant as a suspect in the crimes. Detective McCleery identified the defendant in court and also identified several photographs taken at the scene, including among others, photos of gas cans located in the backyard of the residence and the victim’s bedroom, an aluminum can located in the victim’s bedroom, a photo of the disabled surveillance camera, a picture of a pair of wire cutters found in the backyard as well as a photo of a hat and hospital gloves, which were sitting next to the victim’s bed.
Detective McCleery transported the victim to Charity Hospital for a sexual assault test. The test proved positive for the presence of seminal fluid. While at the hospital, the victim identified the defendant as her attacker from a picture presented by -the detective. Detective McCleery prepared an arrest warrant for the defendant and a search warrant, which sought a saliva sample for DNA comparison with the seminal fluid retrieved from the victim’s body. NOPD Officer Joseph Pollard, an expert in fingerprint identification and comparison, found that the fingerprints recovered in this case were not suitable for comparison.
Registered nurse sexual assault examiner, Andrew Mahoney, examined the victim on April 10, 2006. Initially, the victim locked herself in the examination room because she was afraid of being in the room alone. After the victim allowed Ma-honey to enter the room, he found her awake, alert, frightened and talkative as she related the details of the rape. The victim’s examination did not reveal any injuries; however, he testified that the absence of injury was not proof that sexual contact was consensual. Blood testing was negative for the presence of drugs in the victim’s body.
|6The State and defense stipulated that Erica Sparacino was an expert in DNA testing, and that if she were called to testify, she would verify that she tested all of the evidence associated with the sexual assault examination in this case. Further, the tests results proved that the defendant was the donor of the seminal fluid recovered from the victim.
Don Hancock, telephone supervisor for the Orleans Parish Sheriffs Office, explained that he maintained the inmate phone system at the jail. His office records all inmate phone calls, and all records of those calls are archived. Hancock identified State’s exhibit 39 as the CD of the phone calls made by the defendant from September 23, 2008, through March 23, 2009. The State played portions of several phone calls made by the defendant while he was in jail.

ERRORS PATENT

Our review of the record reveals one error patent. The trial court did not observe the twenty-four hour delay, required by La.C.Cr.P. article 873, between his ruling on the motion for new trial and the original sentencing on June 10, 2010. However, this error is harmless because the defendant’s original sentence on count one was vacated when he was resentenced at the multiple bill resentencing on September 3, 2010, and the defendant did not challenge his sentence on count two in this appeal or raise as error the failure of the trial court to wait twenty-four hours before imposing sentence. See State v. Nunnei"y, 2004-1560, p. 6 (La.App. 4 Cir. 12/8/04), 891 So.2d 67, 70.

COUNSEL ASSIGNMENT OF ERROR NUMBER 1 AND PRO SE ASSIGNMENT OF ERROR NUMBER 1

By these assignments, the defendant argues that the evidence was insufficient to support the guilty verdict on count one, forcible rape.
*513 | ^Defense counsel and the defendant argue that the State failed to define the sexual act for which he was charged. He contends that the victim’s testimony was insufficient because she did not identify the sexual act he was accused of having committed. Rather, she used the word “it” instead and never explained what “it” was. They also argue that the State did not prove penetration or that defendant used force or threats of physical violence against the victim.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983).
The defendant in this case was charged with aggravated rape but convicted of forcible rape, La. R.S. 14:42.1, which is a proper responsive verdict for aggravated rape. La. C.C.P. art. 814(A)(8). In order to prove the crime of forcible rape, the State must prove: 1) anal, oral or vaginal sexual intercourse occurred; 2) without lawful consent of the victim; 3) resistance was prevented by force or threats of physical violence; and 4) the victim reasonably believed that such | ^resistance would not prevent the rape. La. R.S. 14:42.1. In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243, p. 13 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045.
The defendant’s arguments are groundless. At trial, the prosecutor asked the victim:
Q. And why didn’t you want to tell your brother [about the rape]?
A. Tell my brother I been raped? ... I didn’t want my brother and them to know [someone] raped me.
The foregoing victim’s response to the State’s question identifies the sexual act as rape.
The defendant’s argument that the State did not prove penetration is also without merit. The victim testified that the defendant raped her. Rape is defined in pertinent part as “... the act of ... vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.” La. R.S. 14:41. The Merriam Webster Dictionary defines vaginal sexual intercourse in part as: “... penetration of the vagina by the penis.”
As for threats of physical violence, the victim testified that the defendant threatened to shoot her in the head and then set her and the house on fire to destroy any evidence of his crimes. The entire time the defendant was with the victim that morning, he was holding a gun, including when he was raping her. The victim did not resist the defendant because “... he had a gun ... and it was like I ain’t had no other choice ...” Moreover, Andrew Ma- *514 honey, the registered nurse sexual assault examiner, testified that he took a vaginal swab, which tested positive for the | ^presence of seminal fluid. Further, the evidence established that DNA tests on fluids matched that of the defendant.
The State proved beyond a reasonable doubt all of the elements of forcible rape. These assignments are meritless.

PRO SE ASSIGNMENT OF ERROR NUMBER 2

By this assignment, the defendant complains that the prosecutor improperly amended the indictment as to count two— unauthorized entry of an inhabited dwelling. First, the defendant claims that there should have been a hearing prior to amending the indictment, and that because there was no hearing, he was “not properly informed of the nature and cause of the accusation against him.” Second, he complains that the State’s failure to list the municipal address and the name of the owner of the property in the indictment violated his rights to present a defense, due process, fail' trial and effective cross-examination of W.P.
The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. State v. Gainey, 376 So.2d 1240, 1243 (La.1979). A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. State v. Williams, 480 So.2d 721, 722, n. 1 (La.1985). In this case, there is no indication in the record that the defendant objected to the sufficiency of the indictment prior to trial. Given La.C.Cr.P. art. 841’s requirement of contemporaneous objections, “a defendant may not raise the sufficiency of an indictment for the first time after conviction ... especially when the charging document fairly informed him of the charge against him and the alleged defect did not prejudice him.” State v. Allen, 2001-2494, p. 1 (La.6/21/02), 824 So.2d 344, 344. The Louisiana Supreme Court has found that, by failing to allege that an indictment provides inadequate notice of the charge prior to trial, the defendant had waived the claim. Id.
The defendant’s first argument is without merit. In accordance with La. C.Cr.P. art. 487, the district attorney has complete authority to amend indictments, both as to form and substance, at any time prior to trial. State v. Neslo, 433 So.2d 73 (La.1983). Where the defense can show prejudice as a result of the amendment, the court should grant a motion for a continuance. La.C.Cr.P. art. 489.
In this case, the district attorney amended the indictment prior to trial. The amendment consisted of inserting W.P.’s name as the owner of the property where the offenses occurred.
The record does not indicate any objection or motion alleging that the charges against the defendant had not been clarified. In fact, the defendant was adequately apprised of the crime of unauthorized entry of an inhabited dwelling. The indictment and the docket master list “unauthorized entry of an inhabited dwelling” and “La. R.S. 14:62.3.” The indictment was read at the defendant’s arraignment, and the State’s response to the motion for bill of particulars lists La. R.S. 14:62.3 as one the offenses charged. The State presented evidence indicating that the investigation phase of the proceedings was pursued as one for unauthorized entry of an inhabited dwelling. Furthermore, in opening and closing arguments, both the State and the defense referenced the charge of unauthorized entry of an inhabited dwelling, a *515 charge on which the court instructed the jury.
As for the defendant’s assertion that because of the amendment, he was unable to properly prepare for cross-examination of a witness, the insertion of WjP.’sn name as owner of the property where the offenses occurred did not change the elements of the offense. W.P. testified at trial that he was the owner and was cross-examined by the defense. The defendant has not shown how the insertion of W.P.’s name hampered his ability to “effectively” cross-examine the witness. In short, the defendant fails to show how the amendment of the indictment prejudiced him.
With regard to the defendant’s argument that the State’s failure to list the municipal address and ownership of the property in the indictment violated his rights, we turn to La.C.Cr.P. art. 464, which provides in part:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
The indictment in this case reads in pertinent part:
... that, on or about April 10, 2006 one, Ronald Reel, committed unauthorized entry of an inhabited dwelling located in the 6600 Block of Brunswick Court belonging to [W.P.] in the Parish of Orleans ...
Additionally, the indictment contains the signature of the Grand Jury’s foreman, the date and the statutory citation for unauthorized entry of an inhabited dwelling-La. R.S. 14:62.3.
The elements of the crime of unauthorized entry of an inhabited dwelling are (1) that the accused entered a dwelling, (2) that the dwelling did not belong to the accused, (3) that the dwelling was used in whole or in part as a home or place of abode, and (4) that the entry was not authorized. La. R.S. 14:62.3; State v. Nunnery, 2004-1560, pp. 9-10 (La.App. 4 Cir. 12/8/04), 891 So.2d 67, 72. The indictment in this case clearly states that the defendant, without authority, entered W.P.’s dwelling in the 6600 block of Brunswick Court. The defendant was adequately apprised of the charge against him.
La.C.Cr.P. art. 469 provides in part:
The place of the commission of the offense need not be alleged in the indictment unless the place of commission is essential to the offense ...
The defendant does not show how the municipal address of the property in this case “is ... essential to the offense.” La. R.S. 14:62.3(A) does not require any more description of the place of the commission of the offense than “inhabited dwelling or other structure ... used in whole or in part as a home or place of abode ...” Consequently, the municipal address did not have to be included in the indictment.
La.C.Cr.P. art. 471 states:
Ownership, or the name of the owner of property, need not be alleged in the indictment, unless such ownership or name of the owner is essential to the offense.
Again, the defendant does not show that the identification of W.P. as the owner of the property “is ... essential to the offense.” La. R.S. 14:62.3 only requires that the inhabited dwelling or structure entered into belongs to another. The indictment *516 lists that the defendant entered the property belonging to another—W.P.
The defendant has failed to show how the State’s failure to list the municipal address and the name of the owner of the property in the indictment violated any of his rights. This assignment has no merit.
| COUNSEL ASSIGNMENT OF ERROR NUMBER 2
The defendant’s next assignment of error argues that the evidence is insufficient to support his adjudication as a third felony offender. He also complains that he was not arraigned on the multiple bill of information.
Addressing first the issue of lack of arraignment, the record shows the defendant was put on notice of the multiple bill at the end of trial on March 16, 2010, when the State filed the multiple bill, and again at the defendant’s June 10, 2010 sentencing. Further, prior to the hearing on the multiple bill on August 6, 2010, the defendant filed a Motion to Quash and/or Object to Habitual Bill of Information in which he did not raise the issue of arraignment. After the trial court denied the motion to quash the multiple bill, defense counsel indicated the defendant’s readiness to proceed with the multiple bill hearing when counsel did not object to the State’s calling its witness. Therefore, any procedural irregularity or error in the failure to arraign the defendant was waived. See State v. Sykes, 2004-1199 (La.App. 4 Cir. 3/9/05), 900 So.2d 156; La.C.Cr.P. art. 555.[2]
The trial court held a hearing at which the State’s evidence proved the defendant’s multiple offender status. NOPD Officer Joseph Pollard testified that he took the defendant’s fingerprints prior to commencement of the multiple bill hearing. Pollard identified State’s Exhibit 1 as the card containing those fingerprints. Further, Pollard identified State’s Exhibit 2 as the certified packet on Case No. 377-073, which evidenced a 1995 Orleans Parish conviction for illegal discharge of a firearm. The packet contains a bill of information containing 114fingerprints, docket master, plea of guilty form, minute entry, screening action form and an arrest register. Pollard testified that he compared the fingerprints on the bill of information of State’s Exhibit 2 to the fingerprints on State’s Exhibit 1, and concluded that the fingerprints on State’s Exhibit 2 belonged to the defendant.
Next, Pollard identified State’s Exhibit 3 as the certified packet on Case No. 388-861, which proved to be a 1997 Orleans Parish conviction for unauthorized entry of an inhabited dwelling. The packet contained a guilty plea form and a bill of information containing fingerprints. Pollard compared the fingerprints in State’s Exhibit 3 to those on State’s Exhibit 1, and found that the prints on the bill of information matched those on State’s Exhibit 1 and belonged to the defendant. Based on the foregoing exhibits and testimony, the State proved that the defendant was a third felony offender.
This assignment is without merit.

COUNSEL ASSIGNMENT OF ERROR NUMBER 3

In this assignment, the defendant complains that at his initial sentencing and the multiple bill sentencing, the trial court failed to advise him, as required by La. C.Cr.P. art. 930.8, of the time period in *517 which to petition for post-conviction relief.[3]
The language in La.C.Cr.P. art. 930.8 is merely precatory and does not bestow an enforceable right upon an individual defendant. State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, 1201. Accordingly, this failure is not | lfian error and requires no action on the part of this court. State v. Guy, 95-0899 (La.App. 4 Cir.1/31/96), 669 So.2d 517, 526-27. This assignment is meritless.

PRO SE ASSIGNMENT OF ERROR NUMBER 3

This assignment argues that the defendant’s rights to a fair trial and due process were violated by the State’s deliberate introduction of false evidence. The defendant’s complaint stems from the recordings of his jailhouse telephone calls, in particular one made on December 6, 2009.
The State entered into evidence a disc of the defendant’s calls compiled and identified by Don Hancock. On its cover, the disc indicates that it contains calls recorded from September 23, 2008, through March 23, 2009. The defendant argues that the false evidence is the December 6, 2009 telephone call. He argues that the State misled the jury in closing argument, citing the December call as proof that the defendant had been attempting to buy the victim’s silence for one year. The defendant points out that if the call did occur, it was made nine months after the cut-off date indicated on the disc, and further, that it did not prove that he had been attempting to prevent the victim from testifying. He contends that, but for the false evidence, he would have had a different outcome at trial. In support of his position, he cites Napue v. People of the State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), for the rule that where a prosecutor allows a state witness to give false testimony without correction,- a reviewing court must reverse the conviction if the witness’ testimony reasonably could have affected the jury’s verdict, even if the testimony goes only to the credibility of the witness. 360 U.S. at 269, 79 S.Ct. at 1177, 3 L.Ed.2d 1217 (1959).
To prove a Napue claim, the defendant must show that the prosecutor acted in collusion with the witness to facilitate false testimony. State v. Broadway, 96-2659, p. 17 (La.10/19/99), 753 So.2d 801, 814. Furthermore, fundamental fairness, i.e., due process, is offended “when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.” Napue, 360 U.S. at 269, 79 5.Ct. at 1177, 3 L.Ed.2d 1217 (1959). When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, the grant of a new trial based upon a Napue violation is proper only if: (1) the statements at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material. United States v. O’Keefe, 128 F.3d 885, 893 (5th Cir.1997).
There is nothing in the record to suggest that the content of the December 6, 2009 telephone call is false or that the call, as the defendant contends, did not occur. Don Hancock, the custodian of the inmate telephone system, testified that he made a recording of the call for trial. Moreover, at trial, Hancock listened to the *518 recording, and he identified the call heard on the tape as the one he produced for trial. The State played the recording for the jury. The defense offered no evidence to refute that the call was made or that the recording introduced at trial was not that of the December 6, 2009 call. Even so, the content of the telephone call is immaterial. Even if the call does indicate that the defendant had been attempting to silence the victim, the call is not evidence that the defendant is guilty of the crimes charged.
The defendant’s contention the State presented false evidence with reference to the December 2009 telephone call by arguing that the call occurred one year, rather than nine months, after the cut-off period listed on the recording, is also | ]7immaterial. The difference of three months between the defendant’s and State’s time computations had no bearing on the verdicts rendered in this case—the overwhelming evidence of the defendant’s guilt did. This assignment has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 4

In his final pro se assignment, the defendant argues that the prosecutor knew or should have known that the victim’s trial testimony was false, and the prosecutor’s failure to correct the false testimony denied him a fundamentally fair trial. In support of his argument, the defendant cites contradictions between the victim’s statement to the police and her trial testimony.
The contradictions the defendant complains of are:
1.police statement—prior to the rape, defendant told the victim he could kill her, but that he loved her too much to do that;
trial testimony—the defendant said the defendant had come to shoot her in the head four times.
2. police report—as the victim got off the bus, the defendant told her that she better start calling and coming around;
trial testimony—the defendant patted the gun in his pocket and told her he would kill her if she told anyone about the assault.
3. police repoH—the victim called her brother who told her to call the police which she did when she got home;
trial testimony—she went to her sister’s house, called her brother, and the two went home together.
4. police repoH—the defendant was calling and standing in the victim’s alley and backyard the night before the rape;
trial testimony—defendant slept on a bench in the alley.
5. police repoH—the victim said her brother must have forgotten to lock the door when he left the house;
trial testimony—the victim said the defendant broke in through the back door and picked the lock.
Further, the defendant notes that the victim testified that the defendant did live at her house, while her brother denied that defendant ever lived there.
None of the foregoing instances proves that the prosecutor knew that the victim’s testimony was false. It cannot be presumed that a prosecutor has knowledge that a witness’ answer is false simply because the witness may have testified somewhat differently on a prior occasion. A witness’ memory may fade with the passage of time. The offenses charged in this case happened on April 10, 2006. The case was tried in March 2010—almost four years after the victim’s horrifying experiences. The terror, stress and pain the victim suffered as a result of the rape offer an explanation for the differences between *519 the information she gave the police immediately after the rape and that of her trial testimony — given approximately four years later under much different circumstances. Moreover, the defendant had a copy of the police report at trial and could have cross-examined the victim on any of the foregoing to emphasize the discrepancies to the jury.
There is no evidence in the record that contradicts the facts that the defendant entered W.P.’s residence without authority and raped the victim at gunpoint with threats of bodily harm. The foregoing instances of conflicting testimony highlighted by the defendant do not prove the testimony was false. The defendant’s right to a fundamentally fair trial was not abridged.
For the reasons stated above, we affirm the defendant’s convictions and sentences.
AFFIRMED

. We refer to the victim by her initials, T.P., or as "the victim," and to her brother by his initials, W.P., in order to protect the victim’s privacy.

. La.C.Cr.P. art. 555 provides in part:
A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.

. La.C.Cr.P. art. 930.8 generally requires that applications for post-conviction relief be filed within two years of the finality of a conviction.