PAUL A. BONIN, Judge.
11 Thayer Hamdalla appeals his conviction for the offense of forcible rape, a violation of La. R.S. 14:42.1 A. Having been adjudicated a second-felony offender, he also appeals the imposition of the maximum sentence of eighty years. See La. R.S. 14:42.1 B and 15:529.1 A(l). With respect to his conviction, he argues first that the evidence is insufficient to support the conviction and second that the trial judge abused her discretion in admitting hearsay testimony of the rape victim’s mother. With respect to the sentence imposed upon him, he argues that the 80-year sentence is unconstitutionally excessive.
We have reviewed the record for sufficiency of evidence under the well-known Jackson v. Virginia standard and conclude that the evidence is sufficient. We have also reviewed the complained-of evidentia-ry ruling under an abuse-of-discretion standard and find no reversible error in admitting the mother’s testimony. Finally, after a review of the sentencing hearing and the pre-sentence investigation report along with the objections lodged to it, we conclude that the sentencing judge did not abuse her considerable discretion in determining that Mr. |2Hamdalla was among the worst of offenders and thereby imposing the maximum sentence. Accordingly, we affirm his conviction and sentence.[1]
In the following Parts, we more fully explain our decision.
I
In this Part, we explain why we conclude that, under the Jackson v. Virginia *621 standard, the evidence in this case is sufficient for the conviction of Mr. Hamdalla for forcible rape.
A
We first consider the essential elements of the crime of forcible rape. Forcible rape punishes, inter alia, oral sexual intercourse committed without the consent of the victim. See La. R.S. 14:42.1 A. The intentional touching of the genitals of the offender by the victim using the mouth or tongue of the victim can constitute oral sexual intercourse. See La. R.S. 14:41 C(2). Forcible rape is deemed to be without the consent of the victim “[w]hen the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.” La. R.S. 14:42.1 A(l). Thus, the essential elements of the offense which the prosecution must prove beyond a reasonable doubt in this case are (1) an intentional act of oral intercourse (2) committed without the lawful consent of the victim when the victim is prevented from resisting the act by force or threats of physical violence under circumstances in which the victim reasonably believes that |3resistance would not prevent the rape. See State v. Reel, 10-1737, p. 7-8 (La.App. 4 Cir. 10/3/12), 126 So.3d 506, 511, 2012 WL 4711881, at *4.
We turn now to a consideration of the trial evidence.
B
Mr. Hamdalla was a taxicab driver. Upon leaving a club in which adults may have consensual sex with strangers, the victim, a twenty-seven year old woman, entered Mr. Hamdalla’s taxi. During the ride, Mr. Hamdalla reached into the backseat area and began to feel or stroke the victim’s ankle. The victim made no objection to his conduct at that point. Mr. Hamdalla invited the young woman to ride in the front seat, and she climbed into the front seat.
Once she was in the front seat, Mr. Hamdalla deviated from the route to her home. Arriving in a dark area with warehouses, Mr. Hamdalla stopped his taxi. Fearing that he was going to force her out of the taxicab, the young woman became even more frightened of what was going to happen. Mr. Hamdalla began to touch her vagina under her dress. The victim denied that she had “come on” to Mr. Ham-dalla. She testified: “I was scared. I wanted ... to tell him to stop, but I just couldn’t. I couldn’t speak.” At the point when Mr. Hamdalla put his hand up her dress, she testified that she “kind of froze up.” She said: “I tried to push it away, but I just couldn’t.” She tried to tell him to stop, but she “couldn’t find the words.”
Then Mr. Hamdalla grabbed the young woman’s hand and made her hand touch his exposed penis. The taxi driver was in the driver’s seat, and she was in the passenger seat. She said that he was holding her wrist and her arm with one 14arm. He tried to make her touch his penis, and she pulled away for a couple of minutes. She testified that she was afraid of getting out of the car in that bad area; she thought something worse might happen. She did not know where the taxi was located. She did not touch his penis willingly. The defendant then “grabbed” her head “and forced it down onto his penis.”
When she was asked if she resisted, she replied: “Yes.” She tried to pull herself away, but Mr. Hamdalla was too strong. She denied wanting to have oral sex (or any sexual encounter) with Mr. Hamdalla. According to the victim, Mr. Hamdalla then forced his penis into her mouth and ejaculated. His penis was in her mouth for “a few seconds.”
*622 Then, he let go of her. She moved back as far as she could go, and Mr. Hamdalla handed her a Kleenex tissue to wipe her mouth. She wiped her mouth and kept the Kleenex. He then pulled out his GPS and asked where she wanted to go. Neither of them said a word. He dropped her off at her mother’s house. She started to give him money, but then put it back in her wallet. He did not ask for money.
The victim’s testimony was not contradicted by any other witness.
C
At the outset of our consideration of the legal precepts which govern our review for sufficiency of evidence, we note that it is clearly established that the testimony of a victim, alone, can be sufficient to establish the elements of the offense of forcible rape, even where the prosecution does not introduce medical, |fiscientific, or physical evidence to prove the commission of the offense by the defendant. See State v. Armstead, 11-1344, p. 4 (La.App. 4 Cir. 7/25/12), 98 So.3d 891, 894, writ denied, 2012-1881 (La.3/8/13), 109 So.3d 355; State v. Wells, 10-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306. See also State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004.
The standard of review for sufficiency of evidence applicable to criminal convictions in state courts is set out in Jackson v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). “After Win-ship the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.” Id. at 318, 99 S.Ct. 2781. “But this inquiry does not require a court to ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ ” Id. at 318-319, 99 S.Ct. 2781 (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (emphasis added by Jackson)). “Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. 2781 (emphasis in original). See also Johnson v. Louisiana, 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (stating: “Jury verdicts finding guilty beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt.”).
|fiIn discharging our review function, we consider “all of the evidence ” before the actual fact-finder. Jackson, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). The United States Supreme Court has explained that the standard of review for sufficiency of evidence is highly deferential to the fact-finder because it “gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Id. “The criterion thus impinges upon ‘jury’ discretion only to the extent necessary to guarantee the fundamental protection of due process of law.” Id.
Similarly, “[a] reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the Jackson standard of review.” State v. Macon, 06-0481, p. 8 (La.6/1/07), 957 So.2d 1280, 1285-1286. “It is not the function of an appellate court to assess credibility or re-weigh the evidence.” Id. at 1286. The Due Process Clause of the Fourteenth Amendment, the source of the Jackson standard, does not countenance, much less *623 require, that we re-weigh testimony and witness credibility. And “[i]n criminal cases [a court of appeal’s] appellate jurisdiction extends only to questions of law.” La. Const, art. V, § 10(B). See also State v. Barthelemy, 09-0391, p. 24 (La.App. 4 Cir. 2/24/10), 32 So.3d 999, 1015.
Therefore, in discharging our review function for sufficiency of evidence, we cannot re-weigh or re-consider reasonable inferences drawn from basic facts to ultimate facts. We must confine ourselves to questions of law except to the extent, and only to the extent, that Jackson mandates otherwise. See State v. Gilmore, 10-0059,7 p. 5 (La.App. 4 Cir. 10/6/10), 50 So.3d 208, 212-213. Hence only irrational decisions to convict (based upon wholly implausible evidence or testimony) by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305, 1310 (La.1988); State v. Winston, 11-1342, pp. 7-8 (La.App. 4 Cir. 9/12/12), 100 So.3d 332, 336-337.
D
Applying these precepts to the un-contradicted testimony of the victim, we find that her testimony is not implausible. Mr. Hamdalla argues only that the prosecution did not prove beyond a reasonable doubt that the oral sexual intercourse was committed without the young woman’s consent. But, of course, the victim established by her testimony, accepted by the jury, that Mr. Hamdalla was forcing her to gratify him in his vehicle which was located in a dark and isolated area, unfamiliar to her. Mr. Hamdalla began by grabbing her arm in order to force her to touch his penis. When she resisted even that contact, he then intensified the encounter through force sufficient to complete oral sexual intercourse. Clearly, any rational juror could infer that she reasonably believed that further resistance would not prevent the rape.
Because Mr. Hamdalla does not contest sufficient proof of the other essential element of the crime of forcible rape, we conclude that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Thus, the evidence is sufficient to sustain the conviction.
Jsi1
In this Part, we explain why the admission of the testimony of the victim’s mother over Mr. Hamdalla’s objection was not reversible error. After reviewing of the record of the trial, we conclude that, while the trial court improperly admitted the hearsay testimony, it was merely cumulative of other admissible testimony.
A
“ ‘Hearsay’ is a statement, other than the one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801 C. Hearsay testimony is not admissible at trial unless provided for by law. See La. C.E. art. 802. Hearsay evidence is generally excluded “because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability.” State v. Legendre, 05-1469, p. 7 (La.App. 4 Cir. 9/27/06), 942 So.2d 45, 51. See also State v. Spell, 399 So.2d 551, 555 (La.1981).
La. C.E. art. 801 D provides several types of prior statements that, if testified to by witnesses, are “not hearsay” as long as the “declarant [also] testifies at the trial or hearing and is subject to cross-examination concerning the statement.” La. C.E. art. 801 D(l). One of these is a witness’ statement made at trial which is “[consistent with the declarant’s testimony and is *624 one of initial complaint of sexually assaul-tive behavior.” La. C.E. art. 801 D(l)(d). This makes the “initial” [ ^complaint of a victim of sexual abuse admissible as substantive evidence. See State v. Moran, 584 So.2d 318, 323 (La.App. 4 Cir.1991).
Admissibility of a statement under La. C.E. art. 801 D(Z)(d) is a two-part test. First, the victim must testify at trial consistently with the content of the initial complaint and be subject to cross-examination. See La. C.E. art. 801 D{l). See also State v. Valentine, 95-0970, p. 6 (La.App. 4 Cir. 1/19/96), 668 So.2d 383, 387. This requirement alleviates the reliability problems inherent in ordinary hearsay, Moran, 584 So.2d at 323, as well as issues arising under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and La. Constitution Article I, Section 16. See La. C.E. art. 801D(1) cmt. e; State v. Moore, 11-0025, p. 14 (La.App. 4 Cir. 9/7/11), 75 So.3d 22, 30. If, for any reason, the victim fails to testify consistently with the alleged initial complaint, the initial complaint would be classified as hearsay. See Moran, 584 So.2d at 323.
Second, the victim’s prior statement must be an “initial complaint of sexually assaultive behavior.” See La. C.E. art. 801 D(Z)(d). “It is only the initial complaint by the victim, whether made to a family member, policeman, or other person, that is defined as non-hearsay under this provision.” La. C.E. art. 801 D(l) cmt. e. Subsequent complaints or reports about the same crime are not admissible under this provision. See Id. There are “no additional requirements as to timing or spontaneity for such a statement to be admissible.” State v. Lawrence, 98-0348, p. 12 (La.App. 4 Cir. 12/1/99), 752 So.2d 934, 942. Whether a victim’s complaint was an “initial complaint” is determined under the facts and circumstances of the case. Moran, 584 So.2d at 324. We have limited the term “initial” to its narrow literal meaning of “first” or “original.” See State v. Henderson, 607 So.2d 733, 735 (La.App. 4 Cir.1992) (testimony of mother as to daughter’s statements was inadmissible hearsay since the victim had already spoken to police and a doctor regarding the incident). See also State v. Atkins, 97-1278, p. 16 (La.App. 4 Cir. 5/27/98), 713 So.2d 1168, 1177 (testimony of detective was inadmissible hearsay when victim spoke with her brother prior to making a statement to the police); State v. Harris, 99-2845, p. 13 (La.App. 4 Cir. 1/24/01), 781 So.2d 73, 82 (testimony of aunt was inadmissible hearsay since victim’s statements to aunt followed a police interview on the matter). The “initial complaint” need not be given to any particular person or at any particular time. The initial complaint need only be comprehensible by the person hearing the complaint. Atkins, 97-1278, p. 16, 713 So.2d at 1177 (citing State v. Free, 26,267, p. 11-12 (La.App. 2 Cir. 9/21/94), 643 So.2d 767, 776).
Additionally, the report must be of “sexually assaultive behavior.” The use of the term “assaultive behavior” is not intended to restrict this exception to instances that fall within the general provision of La. R.S. 15:36, Assault. See La. C.E. art. 801 D(l)(d) cmt. e. This is a broad concept covering numerous crimes including La. R.S. 14:42.1, Forcible Rape. Id.
Generally, a trial court’s rulings on evi-dentiary issues will not be disturbed absent a clear abuse of discretion. State v. Mosby, 595 So.2d 1135, 1138-1139 (La.1992). “A judgment or ruling shall not be reversed by an appellate court because of l^any error ... which does not affect substantial rights of the accused.” La.C.Cr.P, art. 921. See also State v. Magee, 11-0574, p. 45 (La.9/28/12), 103 So.3d 285, 318. While the article uses dramatically different language, jurisprudence recognizes the *625 importation and application of the “harmless error” rule in this context. See State v. Maise, 00-1158, p. 8 (La.1/15/02), 805 So.2d 1141, 1147. See also La.C.Cr.P. art. 921 cmt. c. “The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant’s guilt or innocence ... and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.” Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The harmless error test asks “whether there is a reasonable possibility the error might have contributed to the conviction and whether the court can declare a belief that the error is harmless beyond a reasonable doubt.” Magee, 11-0574, p. 45, 103 So.3d at 318 (citing Chapman v. California, 386 U.S. 18, 22-23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). “The reviewing court must find the verdict actually rendered by this jury was surely unattributable to the error.” Id. at 11-0574, p. 45-46, 103 So.3d at 318 (citing Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).[2]
In making this determination, a reviewing court should consider “the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or | ^contradicting the testimony on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.” State v. Wille, 559 So.2d 1321, 1332 (La.1990) (quoting Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431). The Louisiana Supreme Court has held that, “even if testimony is inadmissible hearsay, if it is merely cumulative or corroborative of other testimony adduced at trial, then the admission of the hearsay is harmless.” State v. McIntyre, 381 So.2d 408, 411 (La.1980). See also State v. Johnson, 389 So.2d 1302, 1306 (La.1980). Cumulative testimony is, of course, testimony tending to prove the same point to which other evidence has been offered.
B
When the victim arrived at her mother’s home following the rape, she immediately telephoned the taxicab company to report the matter. During her call with the dispatcher, the victim told the dispatcher about the incident, specifying the taxicab number of the person who committed the acts, when these acts occurred, and what acts were done by Mr. Hamdalla. The initial purpose of her calling was to allow for the taxicab company to discipline Mr. Hamdalla internally for his acts. While the victim was speaking on the telephone with the dispatcher, her mother, from her bed, overheard her daughter’s conversation in the home’s living room describing the rape. The mother then went to the living room. After concluding her telephone call, the victim explained the entire matter to her mother, who encouraged her to report the rape to the police. The mother then testified to what she was told by her daughter at trial.
| 1sImportantly, at the trial — in addition to the mother — the victim testified consistently with and in more detail than the mother’s testimony and was subject to cross-examination regarding the statement. The jury also heard firsthand a tape recording of the victim’s initial report by telephone to the dispatcher.
C
The testimony of the victim’s mother regarding what her daughter told her *626 that night was improperly admitted by the trial court. The mother’s testimony is inadmissible hearsay under La. C.E. art. 801 C and is not excepted from the general inadmissibility of hearsay by La. C.E. art. 801 D(l)(d). While the victim testified at trial consistently with the content of the initial complaint and was subject to cross examination regarding the statement, the victim’s prior statement to her mother was not an initial complaint of sexually assaul-tive behavior. The victim reported Mr. Hamdalla’s conduct to the dispatcher prior to speaking with her mother about what happened. The initial complaint regarding Mr. Hamdalla’s actions was given to the dispatcher, not the mother. The trial court erred in admitting the mother’s testimony regarding her daughter’s statements. The error, however, was harmless as the hearsay was consistent with and merely cumulative of the victim’s testimony as well as the recorded call introduced at trial. Both covered the same issue as the mother’s testimony — the victim’s recollection of what occurred the night that she was raped. Thus, the verdict was surely unattributable to the error and, on that account, it does not qualify as reversible error.
_toIH
In this Part, we turn to an explanation of our decision that the sentencing judge, who substantively complied with the legislative directive to adequately consider factors militating for and mitigating against lengthier sentences within a sentencing range, did not abuse her considerable discretion standard. After considering Judge Buras’ justification for the sentence imposed, we conclude that the maximum sentence, which was imposed upon Mr. Ham-dalla, is not outrageous and is not shocking to the conscience. Thus, we conclude from our review that the sentence is not unconstitutionally excessive.
A
Article I, Section 20 of the Louisiana Constitution of 1974 prohibits any law from subjecting a person to excessive punishment. The excessiveness of a sentence is a question of law reviewable by this court under its appellate jurisdiction.[3] See La. Const. Art. 5, § 10. The Louisiana Constitution differs from the Eighth Amendment to the U.S. Constitution in its explicit prohibition of excessive sentences. This “deliberate inclusion by the redactors of the Constitution of a prohibition against ‘excessive’ as well as cruel and unusual punishment broadened the duty of this court to review the sentencing aspects of criminal statutes.” State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977. A sentence is constitutionally excessive if “it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime.” State v. Davis, 449 So.2d 452, 453 (La.1984).
|1sThe prohibition against excessive sentences forbids their imposition by the judiciary as well as the legislature, and requires review of statutory sentencing guidelines in relation to the particular offense and offender. State v. Sepulvado, 367 So.2d 762, 766 (La.1979). “[Penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society.” State v. Landry, 03-1671, p. 8 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239. A trial judge is given *627 wide discretion in the imposition of sentences within statutory sentencing guidelines. See State v. Cann, 471 So.2d 701, 703 (La.1985). See also Sepulvado, 367 So.2d at 769. This discretion has long been historically established. Dillon v. U.S, 560 U.S. 817, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010). The “imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional right against excessive punishment.” Cann, 471 So.2d at 703. Statutory sentencing guidelines vary significantly in the degree to which they grant a sentencing judge the discretion to weigh the circumstances of the offense and mete out justice to those convicted. “In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the judge shall exercise discretion to impose sentences gradated according to the individualized circumstances of the offense and the offender.” Sepulvado, 367 So.2d at 766. This interactivity between the range of permissible statutory criminal sanctions and the individualized facts of each case creates a sliding, fact-variant spectrum for a trial judge’s discretion under each criminal statute for each particular criminal defendant. Thus, the range of discretion granted a sentencing judge in handing down a sentence fluctuates depending on the interactivity of the facts of a particular case, the permissible 11ficriminal sanctions, and the range of conduct prohibited by the particular criminal statute that the defendant is convicted of violating.
A reviewing court should not set aside a sentence imposed by a trial court absent a manifest abuse of this discretion. See State v. Batiste, 06-0875, p. 17 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820 (emphasis added). Our sentence review should strive only to correct “abuses of sentencing power” by the district judge, Sepulvado, 367 So.2d at 767, and not to attempt to impose sentences that we deem more appropriate. See State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, 608.
In reviewing a sentence for excessiveness, we ensure that the trial court took into account appropriate considerations in placing a specific defendant, when examining their specific offense, on a particular point in the range of statutorily permissible sentences. The Legislature has directed the trial courts to consider certain artic-ulable criteria contained in La.C.Cr.P. art. 894.1 when handing down their sentences, and to state those considerations and their factual basis for the record. See La. C.Cr.P. art. 894.1 C. In evaluating whether the district court has abused its broad sentencing discretion, we first examine whether the court obeyed this legislative directive. See Sepulvado, 367 So.2d at 767-768.
The primary purpose of La.C.Cr.P. art. 894.1 is not to enforce rigid and mechanical compliance with its provisions, but to ensure that there is a factual basis for the sentence imposed. See Batiste, 06-0875, p. 18, 947 So.2d at 820. See also Major, 96-1214, p. 10, 708 So.2d at 819. Exces-siveness analysis is cumulative and focuses on a combination of these factors. See State v. Lathers, 444 So.2d 96, 97 (La.App. 4 Cir.1983). “[Tjhese criteria provide guidance as to |17whether the sentence should be closer to the maximum rather than to the minimum statutory range of sentence, if the sentencing judge does indeed determine that imprisonment rather than suspension of sentence or probation is the appropriate disposition.” Sepulvado, 367 So.2d at 767-768. While the trial judge is not required to recite the entire checklist of aggravating and mitigating factors in La.C.Cr.P. art. 894.1, the “record must reflect that the judge adequately considered these guidelines.” State v. Soco, 441 So.2d 719, 720 (La.1983). See *628 also State v. Square, 433 So.2d 104, 110 (La.1983). This requires consideration of those “circumstances militating for incarceration, but also any mitigating factors,” Davis, 449 So.2d at 454, including the offender’s personal history, prior criminal record, the nature and seriousness of the offense, and the likelihood of rehabilitation or recidivism. See Soco, 441 So.2d at 720. See also State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982); State v. Telsee, 425 So.2d 1251, 1253 (La.1983).
Importantly, La.C.Cr.P. art. 894.1 is “not an exclusive listing of factors to be considered in imposing a sentence. Any and all relevant factors can and should be taken into account by the trial court.” State v. Lanclos, 419 So.2d 475, 478 (La.1982). See also Pepper v. U.S., — U.S. -, 131 S.Ct. 1229, 1240, 179 L.Ed.2d 196 (2011). “Permitting sentencing courts to consider the widest possible breadth of information about a defendant ‘ensures that the punishment will suit not merely the offense but the individual defendant.’ ” Id. (quoting Wasman v. U.S., 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984)). For example, the defendant’s truthfulness or lack thereof may be considered by the court in sentencing but is not alone a sufficient basis for the imposition of a relatively harsh penalty. See Quebedeaux, 424 So.2d at 1014. See also State v. LaFleur, 391 So.2d 445, 447 (La.1980). A judge also has discretion to hear a defendant’s allocution pre-sentencing and take this into account when determining | iRthe appropriate sentence for this defendant. La.C.Cr.P. art 871 cmt c. Sentencing judges may also consider the details of plea bargains and the details surrounding those offers as circumstances surrounding the offense. Lanclos, 419 So.2d at 478.
In order to aid the judge in comprehensively evaluating a defendant under La. C.Cr.P. art. 894.1, a “court may order the Department of Public Safety and Corrections, division of probation and parole, to make a presentence investigation.” La. C.Cr.P. art. 875. A PSI report is an excellent instrument to assist the sentencing judge in substantively evaluating the factors in Article 894.1 as well as provide us, the appellate court, with a complete record in reviewing direct and post-conviction appeals for excessive sentences. See State v. Conner, 09-1023, p. 4 (La.App. 4 Cir. 2/3/10), 30 So.3d 1132, 1135; La.C.Cr.P. art. 881.3; La. C. Cr.P. art. 877.[4] The criminal defendant has a right to examine this report as “[fjundamental fairness to the defendant requires that the substance of all derogatory information which adversely affects his interest and which has not otherwise been disclosed in open court should be called to the attention of his defendant, his attorney, or others who are acting on his behalf.” State v. Bosworth, 360 So.2d 173, 175 (La.1978) (internal quotations and citations omitted). “When, in imposing a heavy sentence, the trial court relies upon pre-sentence information which is materially false or which furnishes invalid information, the defendant must be given an opportunity to deny or explain such substantially significant misinformation.” Id. See also State v. Ray, 423 So.2d 1116, 1121 (La.1982). This is usually done through a sentencing hearing, at which time the defendant is allowed to introduce sentence-influencing factors and considerations. See Sepulvado, 367 So.2d at 769. Sentencing hearings are a helpful practice to avoid remands to determine the basis of a sentence. Id. Errors committed in pre-sentence investigations and sentencing hearings should be reviewed to determine *629 if they caused prejudice to the defendant. State v. Gulden, 399 So.2d 194, 200 (La.1981).
If we find that the district court properly considered the sentencing criteria in La.C.Cr.P. art. 894.1, we should then determine whether the defendant’s sentence shocks the court’s sense of justice in its disproportionality as to the facts and circumstances of this crime and this defendant. See State v. Reed, 409 So.2d 266, 267 (La.1982). See also State v. Wilson, 508 So.2d 960, 963 (La.App. 4 Cir.1987); State v. Black, 98-0457, p. 8, 757 So.2d [887] at 892 [ (La.App. 4 Cir.2000) ]; State v. White, 01-134, p. 11 (La.App. 5 Cir. 7/30/01), 792 So.2d 146, 154. “[M]aximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender.” Quebedeaux, 424 So.2d at 1014. See also Soco, 441 So.2d at 720.
Sometimes, in order to more thoroughly review a maximum sentence, courts have analyzed the sentence through a comparator.[5] See Square, 433 So.2d at 110. See also Telsee, 425 So.2d at 1254; State v. Guajardo, 428 So.2d 468, 472 (La.1983); State v. Welch, 550 So.2d 265, 266 (La.App. 4 Cir.1989); State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189-190.[6] This |¡>nreview, however, must still only be for abuse of the trial court’s broad sentencing discretion. See State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462. An appellate court “shall not set aside a sentence for excessiveness if the record supports the sentence imposed.” La.C.Cr.P. art. 881.4 D. “[G]reat weight must be given to [a sentencing judge’s] factual characterizations of the aggravating and mitigating circumstances justifying more severe punishment.” Sepulvado, 367 So.2d at 767. “[A] remand for resentencing is appropriate only when there appears to be a substantial possibility that the defendant’s complaints of an excessive sentence have merit.” State v. Soraparu, 97-1027 (La.10/13/97); 703 So.2d 608, 608. (internal quotations and punctuation omitted). See also Black, 98-0457, p. 9, 757 So.2d at 892.
B
Mr. Hamdalla’s sentence of eighty years of imprisonment at hard labor without the benefit of probation or suspension of sentence is within the statutory sentencing limitations. It is, however, the maximum penalty allowed to be imposed against Mr. Hamdalla, who has been adju *630 dicated a second felony offender under La. R.S. 15:529.1, following his conviction for the crime of forcible rape.
Before imposing sentence, Judge Buras obtained a pre-sentence investigation report detailing Mr. Hamdalla’s social, employment, and criminal history as well as recommending that the trial judge sentence Mr. Hamdalla, 28 years old at the time of this conviction, to a significant period of years. The PSI | ^report was made available to Mr. Hamdalla and to the prosecutor who were afforded an opportunity to object to any material errors in the report.[7] Mr. Hamdalla argues that the presentence investigation contained errors, specifically noting discrepancies in the information pertaining to door locks on his cab on the night in question. Counsel for Mr. Hamdalla brought this error to the attention of the Judge Buras prior to sentencing. The mistake caused no prejudice to Mr. Hamdalla. See Guiden, 399 So.2d at 200.
In making her determination, Judge Bu-ras examined the PSI and “state[d] for the record the considerations taken into account and the factual basis therefor in imposing sentence.” La.C.Cr.P. art. 894.1 C. She was thorough and considered many of Article 894.1’s factors.
1
In reviewing the factors which militate toward a sentence of lengthy incarceration, Judge Buras examined the facts contained in the pre-sentence investigation report, including Mr. Hamdalla’s extensive recent arrests, prior convictions, and pending charges including a weapons violation in Tennessee in 2003, two arrests in 2004 in Jefferson Parish for simple battery and cruelty to a juvenile, a 2006 arrest for aggravated assault in Orleans Parish, a 2007 conviction in Arkansas for possession with the intent to distribute marijuana, a 2008 conviction in Jefferson Parish for five counts of unauthorized use of a credit card, and four 2007 attempted manslaughter charges pending in St. Charles Parish.
la2Judge Buras then delved into the particular facts of some of these cases, noting the similarities in Mr. Hamdalla’s arrests and convictions. She noted that the offender was charged with simple battery in Jefferson Parish for allegedly groping and biting a woman on the face, cruelty to a juvenile in Jefferson Parish for biting a four year old child on the buttocks because the child would not eat, and aggravated assault in Orleans Parish and attempted manslaughter in St. Charles Parish for shooting at individuals two separate times from his car and, in one of the cases, at a car containing children. Judge Buras also noted that Mr. Hamdalla was charged with unauthorized use of a credit card while still on probation in Arkansas stemming from his arrest for possession of marijuana with an intent to distribute. Additionally, Mr. Hamdalla was convicted of unauthorized use of a credit card in Jefferson Parish for taking a Rolex watch, diamond rings, and credit cards from a fare in his taxi who drunkenly passed out in the backseat. Mr. Hamdalla then used the credit card at multiple stores.
Notably, Mr. Hamdalla does not factually dispute his conduct, behavior and involvement in these offenses. He only argues that the sentencing judge abused her discretion and improperly relied upon and considered previously dismissed offenses *631 and pending felony charges in his criminal record when making her ruling on sentencing. Sentencing judges, however, may consider any and all relevant factors when making their decisions. Lanclos, 419 So.2d at 478.
Judge Buras next found that Mr. Ham-dalla was taking advantage of passengers in his cab who were not “aware as they could possibly be and ... asserting] his authority over his fares by stealing from them, and in this case, raping them.” See La.C.Cr.P. art. 894.1 B(4). She also found that Mr. Hamdalla’s assault, its aftermath, and the resulting trial caused significant emotional trauma on lathe victim,[8] see La. C.Cr.P. art. 894.1 B(9), that forcible rape was a crime of violence under La. R.S. 14:2 B, See La.C.Cr.P. art. 894.1 B(6), that imposing a lesser sentence would deprecate the seriousness of this offense, See La.C.Cr.P. art. 894.1 A(3), that Mr. Ham-dalla was a risk to the community and would not be rehabilitated, See La.C.Cr.P. art. 894.1 A(l), and that he should be confined in an institution for the maximum allowed sentence. See La.C.Cr.P. art. 894.1 A(2). Finally, the sentencing judge also noted that Mr. Hamdalla “is and should be classified as a third offender because of the Arkansas felony as well as the Jefferson Parish felony.” The district attorney apparently elected not to prosecute Mr. Hamdalla as a third felony offender because the prosecution had not received the certified documents from Arkansas at the time of the sentencing hearing.
Also, as we already indicated, the PSI recommended to Judge Buras that she incarcerate Mr. Hamdalla at the upper end of the sentencing range. Moreover, the content of the PSI made clear that Mr. Hamdalla, who neither testified at trial nor sought to personally allocute at the time of sentencing, was not remorseful and that he took no responsibility for his criminal action in raping the young woman. Indeed, even at sentencing, Mr. Hamdalla’s counsel speculated (without any evidentiary or expert support) that both Mr. Hamdalla and his victim were “completely” unable to read each other’s intentions, thereby suggesting that the victim herself shared in any blame.
2
In considering factors that might mitigate the length of the sentence, Judge Buras considered and decided that Mr. Hamdalla did not create a risk of death or _[24great bodily harm in his actions, See La.C.Cr.P. art. 894.1 B(5), and that he did not use a dangerous weapon. See La. C.Cr.P. art. 894.1 B(10). But we importantly note that, if either of these factors had been present at the time of the commission of the offense, Mr. Hamdalla could have been prosecuted for the more serious crime of Aggravated Rape. See La. R.S. 14:42. Finally, Judge Buras also found, as a mitigating factor, that Mr. Hamdalla had no previous convictions for crimes of violence. This is an appropriate consideration and should surely not be discounted in a sentence imposed upon a second offender under the Habitual Offender Law. Cf. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676. Judge Buras, however, regarded Mr. Hamdalla’s conviction for unauthorized use of a credit card to be “just as much as a robbery could be.” See La. R.S. 14:65. The sentencing judge clearly took into account the criteria set forth in La.C.Cr.P, art. 894.1.
*632 C
Based upon this thorough justification for imposing the maximum sentence of eighty years of imprisonment at hard labor without the possibility of parole, probation, or suspension of sentence, we are satisfied that Judge Buras fully complied with the directive of Article 894.1 and customized the sentence in this matter both to the severity of this offense and to this offender. We do not find that the imposition of the maximum sentence in this particular case is outrageous and shocking to the sense of justice or that Mr. Hamdalla should not be classified as among the worst who have committed forcible rape.
1 ¾;Judge Buras did not abuse her considerable discretion, and we also conclude that Mr. Hamdalla’s sentence does not violate Louisiana’s constitutional guarantee against excessive punishment.
DECREE
The conviction of Thayer Hamdalla for forcible rape is affirmed. The imposition of the maximum sentence of eighty years at hard labor without the possibility of probation or suspension of sentence is also affirmed.
AFFIRMED.

. We have, as we always do, conducted an examination of the record for errors patent. See La.C.Cr.P. art. 920(2). We have not detected any such errors.

. The prosecution bears the burden of proving harmless error as they were the beneficiary of the error. State v. Lewis, 12-1021, pp. 15-16 (La.3/19/13), 112 So.3d 796, 805.

. A sentence is the penalty imposed by the court upon a verdict of guilty. Sentence shall be pronounced orally in open court and recorded in the minutes of the court. See La. C.Cr.P. art. 871.

. For example, compare, e.g., State v. Rayfield, unpub., 10-0421, p. 4-7 (La.App. 4 Cir. 12/22/10) with Conner, 09-1023, p. 4-5, 30 So.3d at 1134-1135.

. A comparator is any of various instruments for comparing a measured property of an object with a standard. In this case, the sentence imposed, measured in years and other factors such as eligibility for parole, probation, and suspension of sentence, would be compared for excessiveness by examining the disposition of cases of similar crimes by the same court or other courts and creating a broad permissible range of sentences.

. Resorting to a comparator in evaluating ex-cessiveness in sentences imposed under habitual offender proceedings before finding that the sentence is shocking based upon Article 894. l's factors lacks some logical force because the consideration of comparators as part of an element dealing with customization of a sentence for this offender and this offense seems to be opposed to the concept that there are inherent factual variances that come with each criminal trial, offender, and offense. A comparator, it seems, is more appropriately utilized after we find that the sentencing court shockingly abused its broad sentencing discretion. The use of comparators in this context will most effectively ensure that the defendant’s sentence when reconsidered will be proportional in comparison with other similar offenders and to provide sufficiently clear parameters for the sentencing court's action upon remand, if necessary. This framework would mirror review of general damages in the civil context. See, e.g., Miller v. Lammico, 07-1352, p. 28-29 (La.1/16/08), 973 So.2d 693, 711.

. Mr. Hamdalla's attorney at trial noted two specific errors in the pre-sentence investigation report. First, the report stated that Mr. Hamdalla pulled the victim into the front seat. This was contradicted by the victim’s testimony at trial. Second, the pre-sentence investigation stated that the doors to the cab could not be opened. There was no evidence of this at trial and was contradicted by Detective Haynes’ testimony.

. Mr. Hamdalla, according to the sentencing hearing, declined a pretrial guilty-plea bargain by which he would plead guilty to second degree battery (a non-sex charge and thus no sex-offender registration requirement) and the prosecution would forego habitual offender proceedings in exchange for a stipulated sentence of five years confinement.