| | | |
|---|---|---|
| STATE OF LOUISIANA | * | NO. 2023-KA-0591 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| TASHONTY C. TONEY | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 545-469, SECTION "A"
Honorable Simone A. Levine
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Judge Nakisha Ervin-Knott)

**LOVE, C.J., DISSENTS IN PART AND CONCURS IN PART WITH REASONS**

Jason Rogers Williams
District Attorney, Orleans Parish
Brad Scott
Chief of Appeals
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR STATE/APPELLEE

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

      COUNSEL FOR DEFENDANT/APPELLANT

                      **AFFIRMED**
                      **April 17, 2024**

This is the second appeal in this criminal case by Defendant–Tashonty Toney—of his sentences. Mr. Toney pled guilty to a sixteen-count indictment; we group the sixteen counts into the following five categories:

(i)     Count 1: La. R.S. 14:100(C)(1), hit and run driving-no death or serious bodily injury;

(ii)    Counts 2 and 3: La. R.S. 14:32.1(C), Vehicular homicide BAC greater than 0.20;

(iii)   Counts 4 to 9: La. R.S. 14:39.2, first degree vehicular negligent injuring;

(iv)    Count 10: La. R.S. 14:39.1, vehicular negligent injuring; and

(v)     Counts 11 to 16: La. R.S. 14:100(C)(1), hit and run driving-no death or serious bodily injury.[1]

Following the first sentencing hearing, the district court sentenced Mr. Toney to the maximum sentence on each count and ordered the sentences run consecutively. As a result, the district court initially imposed a 91-year cumulative sentence.

---

[1] For ease of discussion, the same misdemeanor offense as in category "(i)"—La. R.S. 14:100(C)(1)—is repeated in category (v).

In the first appeal, this Court vacated the sentences and remanded for a second sentencing hearing at which Mr. Toney would be given the opportunity to present mitigating evidence. *State v. Toney*, 21-0131 (La. App. 4 Cir. 11/3/21), 331 So.3d 398 ("*Toney One*"), *writ denied*, 21-01805 (La. 1/26/22), 332 So.3d 77.

On remand, following the second sentencing hearing, the district court again sentenced Mr. Toney to the maximum sentence on each count. But, the district court made the following three changes to the conditions on those sentences: (i) ordered that all but two of the categories of sentences run concurrently, which resulted in a 65-year cumulative sentence[2]; (ii) ordered that each of the consecutive 30-year sentences for negligent homicide be served without benefit of probation, parole, or suspension of sentence only for the first 15 years; and (iii) ordered that all fines, except for a $1,000 fine as to Count 10, be waived.[3] This second appeal followed.

---

[2] The two counts of vehicular homicide (Counts 2 and 3) were ordered to run consecutively to each other— because two of the victims died, La. R.S. 14:32.1(D) mandated this condition; and Count 2 was ordered to run consecutive to Counts 4 to 9: the first degree vehicular negligent injuring counts. As to Count 10, the vehicular negligent injuring count, the district court stated: "[t]hat sentence did run consecutively previously, but this time the Court will run that 6 month misdemeanor sentence concurrently."

[3] Here, as in *Toney One*, the district court imposed a legal, maximum sentence within the range provided by the applicable criminal statutes on each count. As we noted in *Toney One*, 21-0131, p. 7, n.2, 331 So.3d at 402, these statutes provide the following sentencing ranges:

> La. R.S. 14:100(C)(1)(b) provides in pertinent part, "[w]hoever commits the crime of hit-and-run driving where there is no death or serious bodily injury shall be fined not more than five hundred dollars, imprisoned for not less than ten days nor more than six months, or both...".

> La. R.S. 14:39.1(C) provides, "[w]hoever commits the crime of vehicular negligent injuring shall be fined not more than one thousand dollars or imprisoned for not more than six months, or both."

> La. R.S. 14:39.2(D) provides, "[w]hoever commits the crime of first degree vehicular negligent injuring shall be fined not more than two thousand dollars or imprisoned with or without hard labor for not more than five years, or both."

## STATEMENT OF THE CASE

This Court, in *Toney One*, summarized the facts of this case; we do not repeat them all here. Simply stated, the incident in question occurred on the night of March 2, 2019, following the Endymion Mardi Gras parade. The incident occurred when Mr. Toney operated his vehicle at an excessive rate of speed—80 mph—while intoxicated. His vehicle struck seven bicyclists, who were legally riding in a bike lane. Two of the bicyclists—Sharee[4] Walls and David Hynes—were pronounced dead on the scene; the other seven bicyclists suffered various degrees of injuries. Mr. Toney's vehicle also struck several other vehicles. Ultimately, Mr. Toney's vehicle came to rest on the neutral ground. He exited his vehicle and fled on foot. Witnesses retained Mr. Toney two blocks away, and the

---

La. R.S. 14:32.1 provides in relevant parts as follows:

(B) Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. ... If the operator's blood alcohol concentration is 0.15 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. ...

(C) Whoever commits the crime of vehicular homicide shall be sentenced as an offender convicted of a crime of violence if the offender's blood alcohol concentration, at the time of the offense, exceeds 0.20 percent by weight based on grams of alcohol per one hundred cubic centimeters.

(D) Notwithstanding the provisions of Code of Criminal Procedure Article 883, if the offense for which the offender was convicted pursuant to the provisions of this Section proximately or directly causes the death of two or more human beings, the offender shall be sentenced separately for each victim, and such sentences shall run consecutively.

[4] Ms. Walls' first name is spelled differently in the indictment than it is spelled throughout the transcripts.

police arrested him. Thereafter, Mr. Toney was charged with 16 counts, summarized at the outset of this opinion. He pled guilty to all counts.

Following a two-day sentencing hearing, held in October 2019, the district court imposed a 91-year cumulative sentence, which was broken down into the five categories as follows:

- Count 1: hit and run driving-no death or serious bodily injury: six months in Orleans Parish Prison ("OPP"), to run concurrent with any and all other sentences;

- Counts 2 and 3: La. R.S. 14:32.1(C), Vehicular homicide BAC greater than 0.20: thirty years at hard labor in the Department of Corrections ("DOC") on each count, without benefit of probation, parole, or suspension of sentence, to run consecutive to each other and to all other sentences; and a fine of $2000 on each count;

- Counts 4 to 9: first degree vehicular negligent injuring: five years at hard labor in the DOC on each count, with the sentences for each count to run consecutive to each other and to the previous sentences; and a fine of $2000 on each count;

- Count 10: vehicular negligent injuring: six months in OPP, to run consecutive to Counts 11-16; and a fine of $1000; and

- Counts 11 to 16: hit and run driving-no death or serious bodily injury: six months in OPP on each count, to run concurrent with each other and with any and all other sentences. [5]

Mr. Toney filed a motion to reconsider sentence, which the district court denied.[6]`

---

[5] Mr. Toney does not challenge either the hit-and-run driving or the vehicular negligent injuring sentences in this appeal. Accordingly, appeal of those sentences is deemed abandoned. Thus, only Counts 2 and 3, and Counts 4 to 9 are before us on appeal.

[6] In connection with the motion to reconsider, in November 2019, four of the non-homicide victims submitted a letter to the district court in support of reconsideration and a reduced sentence (the "November 2019 Letter"). The letter was written by three of the first degree negligent injuring victims and the victim named in Count 10, Gabriel Alaino. These victims requested a reduction of Mr. Toney's sentence. In their letter, these victims cited several mitigating factors—Mr. Toney's decision to plead guilty; his demonstration of remorse; his commitment to his family; and their belief that without a driver's license, Mr. Toney did not pose a lasting threat to society. In their letter, these victims stated that "[Mr. Toney's] irresponsible and thoughtless actions gruesomely killed two beautiful souls and injured many others, and for that he should spend a significant amount of time in prison and never be allowed to drive a motor

In *Toney One*, this Court observed that it could not adequately review Mr. Toney's arguments regarding the excessiveness of his sentence; thus, this Court vacated Mr. Toney's sentences and remanded to the district court for a second sentencing hearing. In so doing, this Court instructed that the district court "state the considerations taken into account and the factual basis found in the record for (1) imposing a maximum sentence for any count of the conviction, (2) imposing consecutive sentences, and (3) restricting benefits on sentences." *Toney One*, 21-0131, p. 15, 331 So.3d at 407-08.

On remand, the district court, in December 2022, conducted a second sentencing hearing. At the hearing, the State introduced the record and exhibits from the first sentencing hearing. The State also submitted, among other things, Mr. Toney's 2016 DWI arrest citation (the "2016 DWI"). Mr. Toney introduced character letters from family, friends, and co-workers; and the November 2019 Letter written by four of the non-homicide victims.

At the resentencing hearing, both sides called multiple witnesses. The State's witnesses included the homicide victims' parents, family members, and friends. The State's witnesses testified regarding the devastating impact of the homicide victims' deaths and those victims' beloved character. Mr. Toney offered testimony from his mother, aunts, and work supervisor as to his otherwise good character and his roles as caretaker for his mother—who was diagnosed with cancer in 2017—and as a father figure to a nephew and nieces. Mr. Toney's

_____

vehicle." These victims opined that "Mr. Toney should be required to serve 15-25 years before the consideration of parole." The victims also suggested the 5-year sentences for first degree negligent injuring should run concurrently with the vehicular homicide sentences. In exchange for such a reduced sentence, the victims asked that Mr. Toney "be banned for life from ever obtaining a driver's license."

witnesses expressed their condolences to the victims. Several of his witnesses expressed their willingness to assist Mr. Toney in the event he is released from prison.

At the hearing, Mr. Toney testified and read a statement that he had prepared expressing his remorse and his regret. He did not contest the 2016 DWI. He testified that he fulfilled all the requirements associated with the 2016 DWI, including taking all the required courses—attendance at a Mothers Against Drunk Driving ("MADD") course was required; attendance at Alcoholics Anonymous ("AA") was not required. He admitted that he had an alcohol problem in 2019. He explained that, on the day of the incident, March 2, 2019, he was celebrating his birthday and that he drank a lot on the parade route. He admitted he made a conscious, reckless decision to drink that day and that he was drunk when he made the decision to drive. He stated that he did not know he was driving 80 mph; rather, he testified that he "didn't drive 80 miles an hour on purpose. I didn't know that I was going that fast at all." Likewise, he stated that he did not recall driving in the bike lane. He stated that he blacked out. He stated that he fled because he was spooked and scared. But, he took full responsibility for his actions.[7]

Following the second sentencing hearing, the district court sentenced Mr. Toney to a 65-year cumulative sentence. Broken down into the five categories, the sentence imposed was as follows:

- Count 1: hit and run driving-no death or serious bodily injury: six months in OPP, to run concurrent with any and all other sentences.

---

[7] During cross-examination by the State regarding the phone call with his sister following the first sentencing hearing in which he and his sister were laughing and his sister called Ms. Walls' parents of nasty names, Mr. Toney testified that he never responded to his sister's name-calling and that he did not chastise his sister because he knew she "was wound up," so he just changed the conversation.

- Counts 2 and 3: <u>vehicular homicide BAC greater than 0.20</u>: On Count 2, Ms. Walls, thirty years at hard labor in the DOC for fifteen years without benefit of parole, probation or suspension of sentence; and this sentence will run consecutive to the previous sentences of the felonies—Counts 4 to 9 first degree vehicular negligent injuring; on Count 3, Mr. Hynes, thirty years at hard labor in the DOC without benefit of probation, parole, or suspension of sentence for the first fifteen years; and this sentence will run consecutive to the sentence in Count two, but concurrent with all other sentences.[8]

- Counts 4 to 9: <u>first degree vehicular negligent injuring</u>: five years at hard labor in the DOC on each count to run concurrent with any and all other sentences;

- Count 10: <u>vehicular negligent injuring</u>: six months in the OPP to run concurrent with any and all other sentences and a $1,000 fine.

- Counts 11 to 16: <u>hit and run driving-no death or serious bodily injury</u>: six months in the OPP, to run concurrent with any and all other sentences.

Mr. Toney filed a motion to reconsider sentence, which the district court denied.

This second appeal followed.

## DISCUSSION

In a single assignment of error, Mr. Toney asserts that his felony sentences are excessive for various reasons.[9] According to Mr. Toney, under the circumstances surrounding this incident and the circumstances personal to him, the maximum (or near maximum) sentences are an abuse of discretion, excessive, and cruel and unusual punishment.[10] Before addressing this argument, we first

---

[8] By statute, Counts 2 and 3 are designated crimes of violence since Mr. Toney's BAC was greater than 0.20. *See* La. R.S. 14:32.1(C).

[9] Mr. Toney does not challenge the sentences on the misdemeanor counts—Count 1, and Counts 11 to 16, the hit-and-run driving sentences; and Count 10, the vehicular negligent injuring sentence—in his appeal. Accordingly, appeal of those sentences is deemed abandoned and shall not be reviewed.

[10] Mr. Toney subdivides his excessive sentences argument into the following four parts:

a) Where consecutive sentences are mandated, that factor must be considered in determining the terms of each sentence.

b) The court's order that half of the sentences be served without parole is excessive.

7

summarize the jurisprudential principles governing excessive sentence review. Then, we apply the principles here.

*Excessive Sentence Review Principles*

Both the Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of cruel and unusual punishment; the Louisiana Constitution additionally prohibits excessive punishment. *State v. Wilson*, 14-1267, p. 23 (La. App. 4 Cir. 4/29/15), 165 So.3d 1150, 1165. "A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." *State v. Ambeau*, 08-1191, p. 9 (La. App. 4 Cir. 2/11/09), 6 So.3d 215, 221. "A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice." *State v. Weaver*, 01-0467, p. 11 (La. 1/15/02), 805 So.2d 166, 174.

The excessiveness of a sentence is a question of law; a reviewing court will not set aside a sentence as excessive absent a manifest abuse of discretion by the sentencing judge. *See State v. Scott*, 23-0022, p. 17 (La. App. 4 Cir. 8/30/23), 372 So.3d 42, 55-56, *writs denied*, 23-01317, 23-01318 (La. 3/19/24), ___ So.3d ____. As this Court has observed, "[o]ur sentence review should strive only to correct 'abuses of sentencing power' by the district judge, and not to attempt to impose sentences that we deem more appropriate." *State v. Hamdalla*, 12-1413, p. 16 (La.

---

c) The identical sentences for first degree negligent injuring do not consider the varying degrees of injuries.

d) The maximum sentences are not supported by the record where the district court was required to consider mitigating circumstances and lesser sentences under *State v. Dorthey*, 623 So.2d 1276 (La. 1993).

App. 4 Cir. 10/2/13), 126 So.3d 619, 627 (internal citation omitted). Stated otherwise, "the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion." *State v. Boudreaux*, 11-1345, p. 5 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, 885 (citation omitted).

The jurisprudence is well-settled that a two-pronged analysis applies in reviewing excessive sentence claims. *State v. Smith*, 11-0664, pp. 23-24 (La. App. 4 Cir. 1/30/13), 108 So.3d 376, 390. First, we must determine if the district court considered the La. C.Cr.P. art. 894.1 sentencing guidelines. *Smith*, 11-0664, p. 23, 108 So.3d at 390. This Court has observed that "[o]ur purpose is not to enforce mechanical compliance by a sentencing judge [with La. C.Cr.P. art. 894.1], but to ensure that there is a factual basis for the sentence imposed." *Id*. (citation omitted).

If the appellate court finds that the trial judge has adequately complied with the La. C.Cr.P. art. 894.1 sentencing guidelines, the appellate court must then, under the second prong of the analysis, "determine whether the defendant's sentence was tailored to both the severity of his crime and his personal situation." *Smith*, 11-0664, p. 24, 108 So.3d at 390. Stated differently, we must determine "whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious offenders." *State v. Dillion*, 23-0453, p. 4 (La. App. 4 Cir. 11/17/23), 377 So.3d 820, 823 (citation omitted); *see also State v. Quebedeaux*, 424 So.2d 1009, 1014 (La. 1982) (observing that "maximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender").

In reviewing a maximum sentence, courts sometimes engage in "a comparator" review of comparable sentences imposed in other cases. *Hamdalla*, 12-1413, pp. 19, 126 So.3d at 629.[11] A comparator review "is useful in itself and sets the stage for . . . inquiry into the nature of the offender and the offense." *State v. Telsee*, 425 So.2d 1251, 1254 (La.1983). But, "the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense." *State v. LeBlanc*, 09-1355, p. 10 (La. 7/6/10), 41 So.3d 1168, 1173. A comparator review, thus, is only to determine if the district court abused its broad sentencing discretion. *Hamdalla*, 12-1413, pp. 19-20, 126 So.3d at 629

In engaging in an excessive sentence review, three general principles are pertinent. First, "great weight must be given to [the district court's] factual characterizations of the aggravating and mitigating circumstances justifying more severe punishment." *State v. Sepulvado*, 367 So.2d 762, 767 (La. 1979). Second, an appellate court "shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La. C.Cr.P. art. 881.4(D). Third, "a remand for resentencing is appropriate only when 'there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit.'" *State v. Soraparu*, 97-1027 (La. 10/13/97), 703 So.2d 608 (quoting *State v. Wimberly*, 414 So.2d 666, 672 (La. 1982)).

Recapping, appellate courts apply a two-pronged analysis to address excessive sentence claims. The first prong is whether the district court adequately considered the La. C. Cr. P. art. 894.1 sentencing guidelines. *Dillion*, 23-0453,

---

[11] "A comparator is any of various instruments for comparing a measured property of an object with a standard." *Hamdalla*, 12-1413, p. 19, 126 So.3d at 629. In the excessive sentence review context, a comparator includes "factors such as eligibility for parole, probation, and suspension of sentence." *Id.*

p. 3, 377 So.3d at 823. The second prong is whether the sentence is warranted based on the facts established by the record. *Id*. We now turn to the application of these principles to this case.

*Prong One—Compliance with La. C.Cr.P. art. 894.1*

Complying with this Court's remand instructions, the district court provided a detailed analysis and documented its consideration of the La. C.Cr.P. art. 894.1 sentencing guidelines in imposing the sentences.[12] Multiple pages of the transcript from the second sentencing hearing, as the State points out, are taken up by the district court's articulation of the factual considerations on which the court based the sentences it imposed.

On appeal, Mr. Toney challenges several of the sentencing factors the district court cited. He contends that the only aggravating factor the district court legitimately relied on was the creation of a risk to more than one person. He further contends that the other remaining factors the district court cited are not supported by the evidence and do not support the maximum sentences imposed on him. In particular, Mr. Toney challenges the district court's finding that Mr. Toney's actions were deliberately cruel. He contends that this finding was contrary to the district court's later remark that there was no intent—that he did not contemplate his criminal conduct would cause or threaten serious harm. Mr. Toney also challenges the district court's finding that bicyclists are vulnerable within the meaning of the statute. In support, he cites La. C.Cr.P. art. 894.1(B)(2), which he contends establishes that the vulnerability must be due to "extreme youth,

---

[12] As noted elsewhere in this opinion, Mr. Toney only challenges the felony counts—Counts 2 and 3, and Counts 4 to 9. We, thus, confine our analysis to those counts.

advanced age, disability, or ill health," not being a bicyclist. None of these arguments is persuasive.

Mr. Toney's first argument is based on an apparent conflict between the district court's finding that Mr. Toney's conduct in the commission of the offenses manifested deliberate cruelty to the victims, and the district court's finding, as a mitigating factor, that "[Mr. Toney] did not contemplate that his criminal conduct could cause this serious harm." We conclude this conflict is insignificant. Twice in its detailed reasons, the district court mentioned a finding of deliberate cruelty to the victims. The district court's two statements, in context, were as follows:

> [First Statement:] You pled guilty and that is worth something. But you must have been extremely drunk for you not to still, even to this day tell us that you remember much of anything. You plowed through human beings like they were not there. You did not stop until your car had struck another car.

> I find that the offenses were committed in a particularly heinous, atrocious and cruel manner. I think that your conduct during the commission of the offense manifested deliberate cruelty to the victims. The fact that you did not stop to provide aid, you knowingly created a risk of death or great bodily harm to more than one person. This injury and the events of those nights resulted in significant permanent injuries and significant economic loss to multiple victims and their families.

> * * *

> [Second Statement:] And I find that the defendant's conduct during the commission of the offense manifested deliberate cruelty to these two victims, not to mention the other seven. I find that the defendant should have known the particular vulnerability or incapability of defending themselves when they're in a bike lane, and he is speeding on a city highway, and they're struck while they're lawfully in the bike lane. The offender knowingly created a risk of death and great bodily harm to more than one person. The offense resulted in a significant and permanent injury and significant economic loss to the victim and the victim's family. I find that there are aggravating circumstances like that he hit multiple cars, that he fled from the scene, and that his blood alcohol content was higher than .20.

12

The district court cited, as one of the mitigating factors it considered, factor 23—that "[t]he defendant did not contemplate that his criminal conduct would cause or threaten serious harm." La. C.Cr.P. art. 894.1(B)(23). Including this mitigation factor, at best, was a recognition that vehicular homicide was not a specific intent crime. Indeed, the district court made the following observation at the second sentencing hearing:

> [T]his is not a specific intent crime or a general intent crime. It's a negligent crime. So based on [Mr. Toney's] negligence, two people's lives were taken and he admits this. We normally have a sentence for someone that has committed a specific intent crime and has taken someone's life. In this case it was recklessness. So, when you demand justice, given the death of two people and an injury for seven others, and you have Mr. Toney that has no prior criminal convictions, he has a prior criminal history. And rather shockingly that police report [for the 2016 DWI] that I read is very similar to this. This occurred in Slidell several years before this, outside a parade route in which he was speeding.

Any conflict between the district court's reliance on this mitigating factor and the district court's finding that Mr. Toney's conduct on the date of the offense manifested deliberate cruelty to the victims—repeated twice in the reasons—is insignificant. The circumstances of the crime here were horrific. The crime resulted in scenes of traumatic destruction, and the carnage it created was unimaginable The crime resulted in the deaths of two bicyclists, the injury of seven others, and the potential harm to countless others.

Nor do we find merit to Mr. Toney's contention that the district court erred in recognizing the vulnerability of bicyclists as an aggravating factor. A similar aggravating factor was cited in *State v. McKinney*, 23-162 (La. App. 3 Cir. 10/4/23), 372 So.3d 957. There, the appellate court emphasized that the defendant's actions in driving while intoxicated resulted not only in the death of one victim—a runner—but also "imperiled others in the victim's running group. . .

." *McKinney*, 23-162, p. 24, 372 So.3d at 970. The same is true here of the other bicyclists, who were legally riding in a bike lane. The district court's reliance on those bicyclists' vulnerability is not misplaced.

In addressing sentencing guidelines, the Louisiana Supreme Court has observed that the factual considerations a district court must consider include "the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, [and] his potential for rehabilitation through correctional services other than confinement." *State v. Jones*, 398 So.2d 1049, 1051-52 (La. 1981). Here, the record reflects the district court took into account these type of factual considerations in fashioning the sentences imposed on Mr. Toney.

The district court judge noted Mr. Toney's age—35 years at time of sentencing, 32 years at time of offense; noted Mr. Toney's prior criminal record— no prior convictions, but a prior criminal violation that was strikingly similar to this one—the 2016 DWI; noted the seriousness of the offense, killing two bicyclists, injuring seven others; noted its finding that it was likely that Mr. Toney would commit another crime; and noted his rehabilitation potential. As to the last factor, the district court observed that Mr. Toney will respond best to rehabilitation, and it would be appropriately provided while he is incarcerated.

In sum, our review of the record reflects that the district court appropriately and methodically applied the La. C.Cr.P. art. 894.1 sentencing guidelines. For all these reasons, we find the first prong of the excessive sentence analysis is satisfied.

*Prong Two—Sentence Warranted Based on the Facts Established by the Record*

Under a review to determine whether the sentence is excessive or the crime is among the most serious violations of the offense charged and the defendant is

14

among the worst class of offenders, a court evaluates a trio of factors: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same and other courts. *State v. Aguliar-Benitez*, 17-361, p. 20 (La. App. 5 Cir. 12/10/18), 260 So.3d 1247, 1263 (internal footnotes and citations omitted). We separately address each of these factors.

Nature of the crimes

First Degree Vehicle Negligent Injuring is a violation of La. R.S. 14:39.2, which provides for a maximum five-year sentence. Vehicular homicide is a violation of La. R.S. 14:32.1, which provides for a maximum thirty-year sentence. "The nature of the crime [of vehicular homicide] is obviously serious—it is a form of homicide. However, it is a homicide that is not based on an intentional killing." *State v. Joseph*, 20-287, pp. 14-15 (La. App. 3 Cir. 5/5/21) (*unpub.*), 2021 WL 1783537.

The Louisiana Legislature's continual reassessment of vehicular homicide as a serious felony offense is reflected in its continual increase of the penalty range, summarized in *LeBlanc*, 09-1355, pp. 9-10, 41 So.3d at 1173. As the Supreme Court observed in *LeBlanc*, the Legislature has continually increased the sentencing range—raising the maximum sentence to fifteen years in 1989; to twenty years, with or without hard labor, in 1999; and to the current maximum of thirty years, with or without hard labor, in 2004. *Id.,* 09-1355, p. 9, 41 So.3d at 1173. "The changes reflect the growing awareness in this state and elsewhere of the carnage caused by intoxicated drivers on the open road." *Id.*, 09-1355, p. 10, 41

So.3d at 1173.[13] The circumstances of the instant offense were horrific, and the carnage unimaginable.

Nature and Background of the Offender

Although Mr. Toney had no prior criminal convictions, the district court found he had a prior arrest citation—the 2016 DWI. Moreover, the district court characterized the 2016 DWI as strikingly similar conduct to the instant offense— the 2016 DWI also involved drinking and speeding at a parade route.

Mr. Toney contends that his background did not qualify him as a worst offender for whom the maximum sentences are reserved. This argument, however, fails to consider the horrific nature of the offenses. The three-part test requires consideration of all the factors in making that determination of whether the maximum sentence is warranted; "[t]his analysis is cumulative and focuses on a combination of these factors." *State v. Smith*, 99-0606, pp. 17-18 (La. 7/6/00), 766 So.2d 501, 514.

Sentence Imposed for Similar Crimes by the Same Court and Other Courts

Mr. Toney contends that other vehicular homicide cases involving more egregious circumstances and more egregious offenders have resulted in more lenient sentences. A similar comparator review argument was rejected in *State v. McKinney*, 23-162 (La. App. 3 Cir. 10/4/23), 372 So.3d 957.

---

[13] Other provisions reflecting enhanced penalties include that offenders with a BAC of 0.15 percent are required to serve at least five years of the sentence without benefits as opposed to three years without benefits for a lesser BAC, and an offender with a BAC of 0.20 percent shall be convicted of a crime of violence. *See* La. R.S. 14:32.1(B) and La. R.S. 14:32.1(C). Also, La. R.S. 15:574.4(A)(1)(b)(ii) provides, in part, that an offender convicted of a crime of violence who is otherwise eligible for parole, "shall be eligible for parole consideration upon serving sixty-five percent of the sentence imposed." Here, Mr. Toney plead guilty to having a BAC of 0.20 percent when he caused the fatal accident.

In the *McKinney* case, the defendant, who was driving while intoxicated, struck a pedestrian who was running with a group in the road. The defendant immediately stopped his vehicle and called for emergency assistance. The victim was transported to the hospital but did not survive. The trial court imposed a thirty-year sentence on the defendant for the one count of vehicular homicide. The trial court, however, suspended seven years of defendant's sentence and ordered that only three years be served without benefit of probation, parole, or suspension of sentence. The defendant argued that lesser sentences had been imposed in cases involving more egregious offenders.

Rejecting the defendant's comparator review argument, the appellate court in *McKinney* observed:

> Defendant does not address the fact that each of the [cited] cases shares the fact that the reviewing panel upheld the sentence imposed by the trial court. None of the panels found it appropriate to reduce the sentence imposed by the trial court. Instead, each case reflects the fact-intensive nature of sentencing and the deference afforded the trial court's shaping of a sentence given the unique facts and circumstances of each case and each offender.

23-162, p. 21-22, 372 So.3d at 969. Concluding, the appellate court in *McKinney* observed that "the trial court considered [the defendant's] lack of arrest record but placed a larger emphasis on the seriousness of Defendant's offense and the implicit disregard for the safety of others." 23-162, p. 24, 372 So.3d at 970. As noted elsewhere in this opinion, the appellate court in *McKinney* emphasized that the defendant's actions resulted not only in one victim's death, but also "imperiled others in the victim's running group." *Id*. Giving the serious nature of the crime coupled with the serious consequences, the appellate court in *McKinney* affirmed.

Echoing the comments of the appellate court in *McKinney*, we note that other than in *State v. LeBlanc*, 09-1355 (La. 7/6/10), 41 So.3d 1168 (which the

Supreme Court reversed the appellate court and reinstated the district court's sentence), and *State v. Morain*, 07-1207 (La. App. 3 Cir. 4/2/08), 981 So.2d 66 (which found the district court's imposition of the maximum twenty-year sentence for vehicular homicide was excessive given that the record did not show defendant to be one of the worst offenders),[14] no appellate jurisprudence could be found in which a reviewing court has vacated a vehicular homicide sentence as excessive. We decline to do so here.[15] Indeed, we stress that this Court has already remanded once for resentencing in this matter.

An excessive sentence review contemplates not only the length of the sentence, but also the availability and restrictions of benefits regarding parole eligibility and early release. *See LeBlanc*, 09-1355, p. 11, 41 So.3d at 1174. As noted elsewhere in this opinion, a comparator review is sometimes helpful.

---

[14] There were multiple remands in *Morain*. Initially, the appellate court remanded for correction of an indeterminate and illegally lenient sentence. *State v. Morain*, 06-710 (La. App. 3 Cir. 11/2/06), 941 So.2d 720. Following the first remand, the appellate court held that the district court's imposition of the maximum twenty-year sentence for vehicular homicide was excessive given that the record did not show defendant to be one of the worst offenders. *State v. Morain*, 07-1207 (La. App. 3 Cir. 4/2/08), 981 So.2d 66. Following the second remand, the appellate court held a 15-year sentence at hard labor, with eight years to be served without benefit of parole, probation or suspension of sentence, was not excessive. *State v. Morain*, 08-1546 (La. App. 3 Cir. 6/3/09), 11 So.3d 733.

[15] In our prior opinion in *Toney One*, 21-0131, p. 12, 331 So.3d at 406, we engage in a comparator of prior vehicular homicide cases and observed as follows:

> *State v. Gordon*, 17-846 (La. App. 3 Cir. 3/28/18), 240 So.3d 301 (finding consecutive sentences of 18 years each, 3 years to be served without benefit, for three counts of vehicular homicide was not excessive given defendant's history and drug abuse); *State v. Lewis*, 13-1588 (La. App. 4 Cir. 8/27/14), 147 So.3d 1251 (finding a sentence of 20 years for vehicular homicide, with 5 years to be served without benefits, and a concurrent sentence of 5 years for first degree vehicular negligent injuring was not excessive) *State v. Morain*, 07-1207 (La. App. 3 Cir. 4/2/08), 981 So.2d 66 (finding that the trial court's imposition of the maximum 20-year sentence for vehicular homicide was excessive given that the record does not show defendant to be one of the worst offenders); *State v. Landry*, 09-260 (La. App. 3 Cir. 11/4/09), 21 So.3d 1148 (finding a sentence of 30 years for vehicular homicide with all but 18 years suspended and 5 years to be served without benefits was not excessive where defendant's BAC was 0.231 at the time of the accident).

*Hamdalla*, 12-1413, pp. 19-20, 126 So.3d at 629. Here, the district court limited the time to be served without benefit of parole to fifteen of each thirty-year consecutive sentence. The district court also declined to impose any fines on the sentences; the previous sentences included a $2,000 fine on both Count 2 and 3. Thus, technically speaking, Mr. Toney did not receive the maximum sentence for vehicular homicide. *See McKinney*, 23-162, p. 17, 372 So.3d at 967. Regardless, considering the horrific nature of the crime coupled with the nature of Mr. Toney's background, we cannot conclude the overall sentences the district court judge imposed for the two counts of vehicular homicide were a manifest abuse of discretion.

Our finding is buttressed by the district court's response, at the second sentencing hearing, to the November 2019 Letter written by four of the non-homicide. Addressing the November 2019 Letter, the district court observed:

> I note that Sofia Vorhoff, Harry Vorhoff and Penelope Catzen all signed a letter to this Court suggesting that the sentence that this Court ordered for the defendant in the sentencing range was zero to five years, they allege that they thought that the five year sentence which this Court ran consecutive on each of those counts was not a fair sentence. And they thought that he should have a 15 to 25 year sentence before he would be eligible for parole. Additionally, they had asked for a ban for life for him to have a driver's license. I note interestingly that by me placing him in jail for such a long period of time would have been in fact been a ban for life from him having a driver's license, since the law doesn't provide that a criminal Court Judge can ever ban anyone for life from driving.[16]

The district court's response to the November 2019 Letter provides insight to the reason for the limitation the court imposed on Mr. Toney's parole eligibility on the

---

[16] *See State v. Johnson*, 580 So.2d 998, 1002 (La. App. 3d Cir.1991) (observing that "[a] condition of probation cannot extend beyond the maximum probationary term of five years" and that "the trial court could only limit the suspension of defendant's driver's license for a maximum of five years").

two vehicle homicide counts—first fifteen years of each count without benefit of probation, parole, or suspension of sentence.

Here, as in *LeBlanc*, we conclude that "the circumstances of the present case so clearly demonstrate why the legislature has steadily increased punishment for the crime of vehicular homicide, the decision of where to place defendant's conduct on that broad sentencing continuum fell within the discretion of the [district] court." 09-1355, p. 10, 41 So.3d at 1173. We also find significant, as did the district court, that Mr. Toney fled the scene. *See State v. Cook*, 95-2784, p. 2 (La. 5/31/96), 674 So.2d 957, 958 (observing that "[f]or the court, the defendant's flight from the scene 'manifested deliberate cruelty to the victim' adding to 'this already serious act . . . a greater degree of culpability' because it 'could have meant the difference between an individual living and dying'"). For all these reasons, we find Mr. Toney's argument regarding the excessiveness of the sentences for the vehicular homicide counts unpersuasive.

We next address Mr. Toney's argument that the maximum sentences of five years imposed on each of the six counts of first degree negligent injuring are excessive. Mr. Toney cites two reasons in support of this argument. First, he contends that the identical sentences for first degree negligent injuring do not consider that each of the victims sustained varying degrees of injuries. Second, he contends that these sentences do not comport with other reported cases—a comparator review argument.

Mr. Toney's first contention is that the fact the five-year sentences for Counts 4 to 9 are identical despite varying degrees of injuries to the victims renders those sentences excessive. Counts 4 to 9 charged the first degree vehicular negligent injuring of Sophie Vorhoff, Harry Vorhoff, Penelope Catzen, Stephen

20

Franklin, Catherine Holmes, and Raven Smith, respectively. Mr. Toney contends that the sentence is excessive at least as to Counts 5 and 6 given that the injuries of those two victims—Mr. Vorhoff and Ms Catzen—consisted of scrapes and bruises. Mr. Toney contends that those injuries were akin to those of another victim, Ms. Alaino—the victim named in Count 10 whose offense was charged as a misdemeanor. Mr. Toney also points out that Mr. Franklin, the victim named in Count 7, was able to leave the scene with a limp without medical treatment. According to Mr. Toney, the district court's decision to impose the same five-year maximum sentence for all six counts illustrates the excessiveness of the sentences given the disparity in the six victims' injuries. Such a comparison is misplaced. The extent of the injuries is only one of countless factors that a district court can consider in sentencing.

Mr. Toney also makes a comparator review argument; he contends that the maximum sentences of five years imposed on each of the six counts of first degree negligent injuring are excessive when compared to other reported cases. In support, he cites *State v. Blanchard*, 03-0612 (La. App. 5 Cir. 11/12/03), 861 So.2d 657 and *State v. Feaster*, 36, 868 (La. App. 2 Cir. 3/5/03), 840 So.2d 675. Mr. Toney emphasizes that, in *Blanchard*, the appellate court found a five-year sentence, with two years of home incarceration, was not excessive for a defendant who had an extensive criminal record, was addicted to alcohol, and refused to take responsibility for his actions. Likewise, in *Feaster*, the appellate court found consecutive five-year sentences on two charges of first-degree vehicular negligent injuring were not excessive given the defendant was driving without a valid driver's license and received a substantial benefit from his plea. Mr. Toney

emphasizes that unlike the *Blanchard* facts, he has no criminal record or history of addiction; and, in contrast to *Feaster*, he did not receive any benefit from his guilty

Mr. Toney's reliance on these cases is misplaced. A more appropriate comparator to this case is *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So.2d 665. There, the Louisiana Supreme Court reinstated the district court's maximum five-year sentence for first degree negligent injuring. In so doing, the Supreme Court observed:

> In combination, the circumstances recited by the court in its reasons provided an adequate factual basis for the court's conclusion that by fleeing the scene of the accident resulting from his extreme intoxication after causing the victim serious injury the defendant had placed himself among the most blameworthy offenders committing the charged crime.

*Cozzetto*, 07-2031, p. 2, 974 So.2d at 666. As noted elsewhere in this opinion, two factors that are significant here are the presence of multiple victims, including two fatalities, and the fact that Mr. Toney fled the scene.

Although Mr. Toney did not have a prior criminal conviction, his criminal history included the 2016 DWI, which the district court characterized as strikingly similar to this incident. Additionally, the circumstances of his first degree negligent injuring offenses involved inflicting injury on six victims, excluding the two fatality victims, the vehicular negligent injuring victim, and property damage. Moreover, the district court in resentencing Mr. Toney ordered that the sentences run concurrently, not consecutively. Given Mr. Toney had a possible sentencing exposure of thirty years if the district court had re-imposed consecutive sentences, we cannot conclude the concurrent five-year sentences on these six counts are excessive. Mr. Toney's first degree negligent injuring excessive sentencing error is unpersuasive.

## DECREE

For the foregoing reasons, we affirm the defendant's sentences.

**AFFIRMED**