STATE OF LOUISIANA     *     NO. 2024-KA-0737

VERSUS     *

    COURT OF APPEAL

HOWARD E. BLUE     *

    FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 553-343, SECTION "G"
Honorable Nandi Campbell
* * * * * *
**Judge Monique G. Morial**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Monique G. Morial)

**LOBRANO, J., CONCURS IN THE RESULT**
**JENKINS, J., CONCURS IN RESULT ONLY**

JASON R. WILLIAMS
DISTRICT ATTORNEY
PARISH OF ORLEANS

Brad Scott
Zachary M. Phillips
ASSISTANT DISTRICT ATTORNEY
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLEE

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333

      COUNSEL FOR DEFENDANT/APPELLANT

                  **AFFIRMED**
                  **AUGUST 21, 2025**

Defendant, Howard E. Blue, ("Defendant"), appeals his June 27, 2024 conviction for aggravated crime against nature, in violation of La. R.S. 14:89.1(A)(2). For the following reasons, we affirm Defendant's conviction and sentence.

## Statement of the Case

Defendant was arrested on October 1, 2021 for crimes committed on or about September 20, 2021. On February 22, 2022, the State of Louisiana charged Defendant with one count of aggravated crime against nature pursuant to La. R.S. 14:89.1(A)(2). Defendant pled not guilty on March 9, 2022. A jury trial commenced on June 25, 2024. During the trial, when called to testify, the nine-year old victim[1] initially refused to enter the courtroom. Although the State called the victim to the stand twice, she failed to appear. Consequently, the trial court dismissed the jury for the day. The defense then moved for a mistrial. The next

---

[1] The statute requires proof that the defendant committed a prohibited sexual act upon a minor under the age of eighteen, known by the defendant to be within the kinship degree described in La. R.S. 14:89.1(A)(2), and, for the enhanced sentencing under La. R.S. 14:89.1(C)(2) to apply, that the victim was under the age of thirteen at the time of the act. The State's evidence proved each element relative to the child victim in this case and is not at issue.

1

morning, the victim appeared ready to testify at trial, yet the court declared a mistrial. The State sought an emergency writ application with this Court and an automatic stay pursuant to La. C.Cr.P. art. 775.1.[2] In case number 2024-0374, this Court denied the State's emergency writ application. However, in 2024-00826, the Louisiana Supreme Court granted the State's emergency writ application. The Supreme Court reversed the ruling of the trial court and remanded for further proceedings.

Trial re-commenced on June 27, 2024, and the victim testified. At the conclusion of trial, the jury found Defendant guilty of the charged crime. After waiving all sentencing delays, the trial court sentenced Defendant to the mandatory minimum sentence of twenty-five (25) years at hard labor on August 15, 2024. During the sentencing hearing, the trial court also denied Defendant's motion for new trial and granted Defendant's motion for appeal. This appeal followed.

## **Facts**

On or about September 19, 2021, the then seven-year old victim, and her younger brother were picked up at their home by the Defendant for an overnight visit. The next day the victim reported that while visiting with Defendant, she went into a bedroom with Defendant to play a game. Shortly thereafter, Defendant pinched her genital area, or "noonie," with two hands underneath her clothes and underwear while she was sitting on his bed. The victim also reported that

---

[2] La. C.Cr. P. art. 775.1 provides: If a judge orders a mistrial, then upon motion of either the state or the defendant, the court shall order an automatic twenty-four-hour stay of all proceedings in which either the state or the defendant may take an emergency writ application to the appropriate reviewing courts with appellate jurisdiction, including the Louisiana Supreme Court.

2

Defendant stopped touching her, and pretended to watch television when Carol Oribio entered the bedroom. After the alleged assault occurred, the victim informed Defendant that she would tell her mother about the incident. She also reported that Defendant became angry and slapped her hard on the leg, making her cry. The victim ran into the kitchen and first reported the alleged assault to Ms. Oribio. She indicated that Ms. Oribio did not believe her. When the children returned home, the victim told her mother ("Mother"), that Defendant had touched her; unsure of how to report the alleged assault her Mother[3] called 911.

Sergeant Ron Howard was dispatched to Mother's residence and took her statement, but did not interview the victim. After taking Mother's statement, Sergeant Howard scheduled a forensic interview for the victim per New Orleans Police Department ("NOPD") procedure at the Child Advocacy Center. During the course of his investigation, Sergeant Howard interviewed Mother, Carol Oribio, reviewed the footage of the forensic interview, but did not interview Defendant. The victim sat for a forensic interview with Tayla Oliver on or about September 23, 2021, at the New Orleans Child Advocacy Center. During the interview, the victim disclosed sexual abuse, and also identified a photograph of Defendant, signed, and dated it. Sergeant Howard then sought an arrest warrant[4] for Defendant which was issued on September 25, 2021.

---

[3] In accordance with Ls. R.S. 46:1844(W)(1)(a), we will refer to the victim's mother as "Mother" to protect the victim's identity.
[4] We note, the arrest warrant was issued for sexual battery pursuant to La. R.S. 14:43.1.

## Errors Patent

In accordance with La. C.Cr.P. art. 920, all appeals are reviewed for errors patent. After a review of the record, we have detected none.

## Discussion

Defendant alleges three assignments of error: (1) the trial court erred in dismissing a juror ex-parte; (2) Defendant's motion for mistrial should not have been reversed by the Louisiana State Supreme Court; (3) and the evidence submitted at trial was insufficient to support Defendant's conviction.

## Assignment of error number three: insufficiency of the evidence

Defendant argues there was insufficient evidence to support his conviction for aggravated crime against nature because it was based solely on the conflicting, uncorroborated and implausible testimony of the victim. When appellate courts review the sufficiency of the evidence to support a conviction, they apply the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *State v. Dukes*, 19-0172, p.7 (La. App. 4 Cir. 10/2/19), 281 So.3d 745, 752. Under the *Jackson* standard, the court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to support a rational trier of fact's finding that all of the elements of a crime were proven beyond a reasonable doubt. *Id.* See also *State v. Tate*, 01-0658, p. 4 (La. 5/20/03), 851 So.2d 921, 928.

The appellate court must review the record in its entirety. *State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988). "If rational triers of fact could disagree as to the

interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. *Id.* Defendant was charged with aggravated crime against nature in violation of La. R.S. 14:89.1(A)(2). Pursuant to the statute:

> Aggravated crime of nature is either of the following:
>
> (2)(a)The engaging in any prohibited act enumerated in Subparagraph (b)[5] of this Paragraph with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew or niece.

Thus, the State was tasked with proving the Defendant committed a sexual battery upon the victim by touching her vagina under or over her clothes. The victim was under the age of thirteen, Defendant was over the age of eighteen and that Defendant knew he was related to the victim. The only element of the offense Defendant disputes was that the State failed to prove he committed sexual battery.

Defendant argues that his conviction was based solely on the testimony of the victim. "In cases of sexual offenses, the testimony of the victim alone may be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense." *State v. Reel*, 10-1737, p. 8 ( La. App. 4 Cir. 10/3/12), 126 So.3d 506, 513. However other witnesses, including Mother, Dr. Anne Troy, and Tayla Oliver

---

[5] According to La. R.S. 14:89.1(2)(b): The following are prohibited acts under this Paragraph:
(i) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(ii) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

5

testified at trial and corroborated the victim's disclosure of the alleged assault, which the State argues satisfied the sexual abuse element of the offense. Tayla Oliver, a former forensic interviewer with the New Orleans Child Care Advocacy Center, testified that she interviewed the victim in September 2021. Ms. Oliver initially could not recall if the victim disclosed sexual abuse during her interview with the victim. Once the State entered the video of the forensic interview into evidence, Ms. Oliver then recalled that H.B. disclosed one incident of sexual abuse, and named Defendant as the perpetrator.

Dr. Anne Troy, a forensic nurse practitioner, testified regarding the medical incident history she obtained from the victim at the Aubrey Hepburn Care Center on October 30, 2021 for the purpose of obtaining a medical diagnosis. At trial, the court qualified her as an expert in child sexual abuse and disclosures. Dr. Troy reported that the victim provided her a "clear and detailed history of having being touched by" Defendant. The victim also stated Defendant tried to give her a pill, but hid it behind his back, once Ms. Oribio entered the room. Dr. Troy relied on the victim's sensory statements in determining her medical diagnosis, including when she recalled telling Defendant that she would tell her mother about the incident, and his hitting her on the leg after.

During the medical incident history with the victim, Dr. Troy did not detect any red flags which required reporting to Child Protection. She also noted that as anticipated, the victim had no genital findings of concern.[6] Based on the totality of

_____

[6] Dr. Troy testified that tissue in the genital area is similar to tissue in the inside of the mouth. This tissue heals in hours rather than days, so Dr. Troy did not expect, based on the type of abuse

her visit with the victim, Dr. Troy's medical diagnosis was child sexual abuse. On cross-examination, Dr. Troy acknowledged that there was no physical evidence of abuse, noting that she obtained her medical incident history approximately forty (40) days after the alleged abuse occurred. She testified that it was not her job to determine whether the victim was lying during her medical evaluation, but reiterated that she did not observe any red flags, or indications that the victim was coached during her evaluation of the victim.

Mother also testified at trial. She pointed to Defendant in open court and identified him. The State also entered the victim's birth certificate into evidence confirming their kinship. Mother reported that prior to the alleged incident, the victim and her younger brother had not seen Defendant for approximately one year. She testified that a couple of hours after her children returned home, the victim reported the alleged incident to her, and she in turn called 911. Mother also testified that the victim's statements regarding the alleged abuse remained consistent for the three-year period which elapsed between the incident and trial.

On the last day of trial, the victim testified she missed Defendant, and asked to spend time with him prior to the alleged abuse. She reported that during her visit, Defendant asked if she wanted to play a game to which she responded, yes. He also asked her if she wanted to go into his room, and she did. The victim recalled telling her mother when she returned home that Defendant touched her. She testified that he touched her private area with his hands. She also identified

_____

reported by the victim to discover physical evidence of sexual abuse as she did not meet with the victim until a month following the alleged abuse.

him in open court as the person who touched her. On cross-examination, the victim remembered speaking with Dr. Troy and Tayla Oliver, and insisted that she reported the truth to them.

Defendant also asserts that the victim made inconsistent and untruthful statements to support his position that her testimony is insufficient to support his conviction. Defendant notes that the victim reported to Ms. Oliver that he used two fingers to pinch her genital area, but told Dr. Troy that he only used one finger. When the victim informed Carol Oribio of the alleged assault, Ms. Oribio denied that Defendant would commit such an act. However, in her statement to Dr. Troy, Ms. Oribio responded, "Okay, okay, okay." Defendant also argues that the victim only reporting Defendant's attempt to give her a pill and later hiding it behind his back when Ms. Oribio entered the room to Dr. Troy, but not reporting to Ms. Oliver bolsters his argument.

Defendant also points to various other inconsistent statements the victim made to discredit her testimony, and question her credibility including but not limited to: (1) whether Ms. Oribio liked her; (2) the victim reporting the Defendant doing drugs, but referring to drugs as cigars and cigarettes; (3) the victim describing the reason a family member got divorced; (4) the victim referring to the clothing she was wearing at the time of the alleged assault as the same clothes worn in an interview; (5) Defendant screaming at her and calling her the "b word;" (6) a statement regarding whether Defendant liked or loved her; (7) testimony regarding the contents of Defendant's closet during the time of the assault: (8) and

8

whether the victim kissed her mother upon returning home, prior to reporting the alleged abuse. A credibility determination is a question of fact within the sound discretion of the jury, which shall not be disturbed on appeal unless its clearly contrary to the evidence. *State v Brown*, 12-0853, p. 2 (La. App. 4 Cir. 2/6/13), 109 So.3d 996, 968. "An appellate court does not assess the credibility of witnesses or reweigh the evidence because '[c]redibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the trier of fact." *State v. Dukes*, 19-0172, p. 8 (La. App. 4 Cir. 10/2/19), 281 So.3d 745, 752 (citing *State v. McGhee*, 15-2140, p. 2 (La. 6/29/170, 223 So.3d 1136, 1137)).

In further support of his insufficiency claim, Defendant also noted that victim's statements to Carol Oribio that he touched her inappropriately were disputed by Ms. Oribio. Ms. Oribio was the sole witness at trial to contradict the victim's account of the incident. She confirmed that the victim and her younger brother were at her home on the morning the alleged abuse occurred, yet denied that the victim reported the alleged abuse to her. Instead, she testified that the victim "seemed very fine to me," and she never saw a problem with her. Yet, Dr. Troy testified that Ms. Oribio was the person to whom the victim first disclosed. "[C]onflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency," and "[s]uch a determination rests solely with the trier of fact, who may accept or reject, in whole or part, the testimony of any witness." *State v. McDonough*, 22-0628, p. 22 (La. App. 4 Cir. 10/27/23), 376 So.3d 1003, 1020 (citing *State v. Scott*, 12-1603, p. 11 (La. App. 4 Cir. 12/23/13), 131 So.3d

501, 508). Moreover, a single witness's testimony, if accepted as true by the jury, is enough to support a factual conclusion. *Id.* (quoting *State v. De Gruy*, 2016-0891, p. 11 (La. App. 4 Cir. 4/5/17), 215 So.3d 723, 730)).

The victim consistently reported to multiple people the specific details of the alleged assault. She described Defendant touching or pinching her genital area to Ms. Oribio, Mother, Tayla Oliver and Dr. Ann Troy, and testified to the same at trial. In the medical incident history Dr. Troy obtained from the victim, she demonstrated how she was pinched, by the movement of her fingers. Dr. Troy described the victim as "strikingly intelligent in her description of things." Also, Dr. Troy testified that she did not detect any red flags during the victim's medical incident history that required reporting to Child Protection, nor was she concerned that the victim had been coached.

Lastly Defendant asserts that the victim's testimony at trial contained several memory lapses. He argues that although she stated that she loved to grab snacks with him, yet she could not recall his name at trial. Also, the victim could not recall during her trial testimony whether something made her afraid on the day of the alleged assault, but did remember telling Mother that Defendant touched her genital area. We note that Defendant had the opportunity to challenge her memory lapses and conflicting statements on cross-examination, yet did not address them.

At the time of the alleged incident, the victim was seven years old, and had not seen him in more than one year. At trial, at least two years later, the victim was nine years old confronting the Defendant with her accusations, and identifying him

in open court as the perpetrator of sexual abuse. Confronting her abuser and relating the details of the traumatic event seemed a daunting task for the victim as she initially refused to enter the courtroom. It is not unreasonable based on her age and the gravity of the charged offense that the jury would not completely disregard her testimony because she was unable to relate the events and circumstances concerning the alleged abuse with specificity.

Notwithstanding Defendant's arguments, the jury found the victim's testimony both credible and sufficient to support Defendant's conviction. Defendant has not demonstrated that the jury's factual findings were clearly contrary to the evidence. After a review of the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the Defendant guilty beyond a reasonable doubt. This assignment of error lacks merit.

**<u>Assignment of error number one: Dismissal of juror *ex-parte*</u>**

After the State and Defendant rested their cases, the trial court informed counsel for both parties that a juror was crying hysterically outside the jury room, and requested to speak with the trial judge. Subsequently, the judge spoke with the juror *ex-parte*, removed her and replaced her with an alternate. Defendant argues that the trial court prevented him from being present and questioning the juror in the judge's chambers in violation of La. C.Cr. P. art 831(A)(3).

La. C.Cr.P. art. 831(A)(3) provides, in pertinent part, a defendant charged with a felony shall be present "[a]t the calling, examination, challenging, impaneling, and swearing of the jury, and at any subsequent proceedings for the

11

discharge of the jury or of a juror." Defendant seeks to have his conviction overturned for the failure of the trial judge to strictly comply with the provision of the code article. However, Defendant made no request to be present in chambers during the judge's *ex-parte* discussion with the juror. "While defendant's absence from the courtroom during the 'calling, examination, challenging, impaneling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror' has the effect of vitiating the entire proceedings, the rights granted by Article 831 are not absolute and can be waived by voluntarily absenting oneself or by not filing a contemporaneous objection to a discussion held in his absence." *State v. Brown*, 23-01715, p. 6 (La. 12/13/24), 397 So.3d 321, 326 (quoting *State v. Wilson*, 44-586, p. 13 (La. App. 2 Cir. 10/28/09). 26 So.3d 210, 219-20)).

The record reveals that the trial court gave both the State and the Defendant an opportunity to be heard prior to speaking with the juror. Counsel for Defendant stated:

MS. RUFFIN:
I want -- am I to be heard first?
Your Honor, based on that information, I think that it is imperative that the juror be able to express his or her concerns, and, based on what the juror says, I would have a different motion and/or objection, but she could be crying because of this or she could be crying because she found out something happened to her family member. We don't know, so we won't know until we know.

The State had no objection to the judge speaking with the juror. The Court then responded:

THE COURT:

Thank you. Let me explain something to you, Ms. Ruffin. I'm not going to speak to the juror and then come back and tell you what they said, so you can make a decision on what to do based on that information.
I intend to speak to the juror and, depending on if she is a juror or alternate, if she is saying -- if she conveys to me that she is unable to proceed, then I'm going to replace her with an alternate. I want y'all to know that.

Defendant's counsel indicated to the judge that she understood, and she would re-urge her motion for a mistrial on the basis that the emotional juror may have influenced the entire jury panel. Shortly thereafter, the judge conducted the *ex-parte* colloquy with the juror, and subsequently replaced her with an alternate after their discussion.

The State argues that Defendant's counsel did not lodge a contemporaneous objection to the defendant's exclusion from the judge's *ex-parte* conversation with the juror, or when the judge removed her, and thus is unable to argue this issue on appeal. La. C.Cr.P. art. 841(A) states, in pertinent part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." On appeal, a defendant is limited to the grounds articulated at trial. *State v. Baker*, 582 So.2d 1320, 1336 (La. App. 4 Cir. 5/30/91). Thus, he must point to the specific error during trial, so that the trial court is afforded the opportunity to make the proper ruling and prevent or cure that error. *Id*. "Without a contemporaneous objection at trial, the appellate court will not consider an assignment of error, raised for the first time on appeal." *State v. Trung Le,* 2017-0164, p. 18 (La. App. 4 Cir. 4/11/18) 243 So.3d 637, 656. The record reflects that defense counsel did not contemporaneously object to the defendant's absence from the trial court's *ex-parte* discussion with the trial judge. Accordingly, he waived

his right to be present during the in-chambers conversation, and is now precluded from raising this issue on appeal pursuant to La.C. Cr. P. art. 841.

Defendant also avers that the trial court erred in dismissing the juror *ex-parte*. "A trial judge has the discretion to replace a juror with an alternate upon finding that the juror has 'become unable to perform or disqualified from performing' his or her duty. La.C.Cr.P. art. 789." *State v. Derouselle*, 99-3282 (La. 4/28/00), 761 So.2d 1269, 1270. As stated above, defense counsel did not lodge a contemporaneous objection to the removal of the juror when the trial judge dismissed her. Instead, defense counsel moved for a mistrial based on the emotional juror potentially influencing the entire jury panel. Again, we find defense counsel did not properly preserve this issue for appellate review. We also find the trial court did not abuse its discretion in removing the juror and replacing her with an alternate.[7] This assignment of error lacks merit.

## Assignment of error number two: Defendant's motion for mistrial should not have been reversed

Defendant argues that the Louisiana Supreme Court erred in reversing the mistrial granted by the trial court alleging prejudice resulted when the victim refused to enter the courtroom, or take the witness stand when she was first called to testify, on June 25, 2024. Defendant also states that the law of the case doctrine should not be applied in this case because when the Supreme Court reversed the mistrial it produced an unjust result.

---

[7] The trial judge included the transcript of the *ex-parte* colloquy in the appeal record. During the exchange, the judge explained her concern to the juror that she could not be impartial because of her heightened emotional response to the victim's testimony. The juror responded that she was an empathetic person and "knew when children lie." The judge then removed the juror out of an abundance of caution noting the emotionally charged nature of the trial.

The State called the victim twice to the stand. Initially, the court waited for a couple of minutes for her to be brought into the courthouse. Once she arrived, the victim refused to enter the courtroom without Mother. The trial judge then allowed Mother to escort the victim into the courtroom with a witness sequestration order in effect, but she failed to appear after being called a second time. Defendant moved for a mistrial, based on undue delay and prejudice.

The next morning, the victim appeared for court ready to testify. The trial court subsequently granted the defense's motion for mistrial. The State requested an emergency stay pursuant to La. C.Cr.P. art. 775.1, and sought an emergency writ application with this Court, which was denied.[8] The Louisiana Supreme Court granted the State's emergency writ application, however, reversing this Court's decision. "Without giving the young witness another opportunity to testify, granting a mistrial was an abuse of discretion." *State v. Blue*, 24-00826 (La. 6/26/24), 388 So.3d 1189. The State argues, in contrast, that the Supreme Court's disposition of this matter bars reconsideration of this issue under the law of the case doctrine.

"The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case." *KeyClick Outsourcing, Inc. v. Ochsner Health Plan, Inc.*, 11-0598, p. 7 (La. App. 4 Cir. 3/14/12), 89 So.3d 1207, 122. "The policy reasons behind the doctrine include: (i) avoiding re-litigation of the same issue, (ii) promoting consistency of results in the same litigation, and (iii) promoting efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue." *Id*. At pp. 7-8, So.3d at 1211-1212. Furthermore, this Court has previously stated that reversal of a pre-trial

---

[8] *See* 2024-0374.

determination is not warranted unless a defendant can present new evidence demonstrating that the earlier decision was patently erroneous and would produce an unjust result. *State v. Gillet*, 99-2474, p. 5 (La. App. 4 Cir. 5/10/00), 763 So.2d 725, 728.

We find that Defendant has presented no new evidence on appeal to support his position that the victim's delay in testifying was prejudicial to the jury. He admitted in his brief to this Court that he has recycled the same arguments made in his original motion for mistrial in the trial court. The jurisprudence is clear that the Supreme Court's ruling reversing Defendant's motion for mistrial is the law of the case, and as such this court and the trial court are bound by its ruling. We find no merit in this assignment of error.

## **DECREE**

For the foregoing reasons, we affirm Defendant's conviction and sentence for aggravated crime against nature pursuant to La. R.S. 14:89.1(A)(2).

**AFFIRMED**